2015 CO 46

**William J. HUNSAKER, Jr., Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 13SC134**

Supreme Court of Colorado.

June 15, 2015

Rehearing Denied July 13, 2015

Attorneys for Petitioner: Haddon, Morgan and Foreman, P.C., Norman R. Mueller, Denver, Colorado

Attorneys for Respondent: Clifford E. Riedel, District Attorney, Eighth Judicial District, Emily Humphrey, Chief Deputy District Attorney, Katharine J. Ellison, Chief Deputy District Attorney, Fort Collins, Colorado

JUSTICE HOOD delivered the Opinion of the Court.

¶1 We granted certiorari in this case to resolve a series of questions arising under the Colorado Sex Offender Lifetime Super-

vision Act ("the LSA" or "the Act"), §§ 18-1.3-1001 to -1012, C.R.S. (2014), which establishes indeterminate sentencing for felony sex offenses. We primarily consider whether a minimum sentence in the aggravated range on a conviction for sexual assault on a child—pattern of abuse is legal when there is no explicit finding of aggravating circumstances. Stated differently: Is this offense subject to the same range, on the bottom end, as any other crime of violence? We also resolve three related procedural questions: Is the prosecution authorized to appeal a legal sentence entered on resentencing? If a defendant received an illegal sentence on one count, does Crim. P. 35(a) entitle him to resentencing on other counts with legal sentences? If not, does Crim. P. 35(b) nonetheless authorize a resentencing court to reconsider and reduce the defendant's legal sentences?

¶2 We hold: (1) when a conviction is for a sex offense that requires sentencing in accordance with the mandatory sentencing statute, the prosecution is not required to prove aggravating circumstances to support a bottom-end sentence in the aggravated range; (2) the prosecution here is authorized to appeal the post-conviction court's ruling on the defendant's Rule 35(a) motion because it challenges the legal basis for the range the post-conviction court used to impose the sentence; (3) under Crim. P. 35(a), the illegality of a sentence on one count does not entitle a defendant to resentencing on other counts with legal sentences; and (4) if a sentence is subject to correction on one count, Crim. P. 35(b) authorizes a resentencing court to reconsider and reduce the legal sentences as to all counts after it has corrected the entire sentence. Accordingly, we affirm the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶3 In 2006, a jury convicted William J. Hunsaker, Jr., of sexual assault on a child (count I), a class 4 felony, and sexual assault on a child—pattern of abuse (count II), a class 3 felony. *See* § 18-3-405(1), (2)(d), C.R.S. (2014). The trial court concluded that these offenses constituted "extraordinary risk crimes" under section 18-1.3-401(10), C.R.S. (2014). This resulted in indeterminate minimum sentencing ranges of two to eight years for count I and four to sixteen years for count II. § 18-1.3-401(10). The court sentenced Hunsaker to indeterminate terms of eight years to life imprisonment and sixteen years to life imprisonment on counts I and II, respectively.

¶4 In 2011, Hunsaker filed a motion to correct his sentences under Crim. P. 35(a) or, in the alternative, a motion to reduce his sentences under Crim. P. 35(b). He argued the two counts could not qualify as extraordinary risk crimes without an explicit finding of aggravating circumstances. He thus concluded that his bottom-end sentences were illegal. The prosecution conceded that neither count qualified as an extraordinary risk crime but asserted only count I's sentence was illegal. The prosecution reasoned: (1) section 18-3-405(3) expressly requires the court to sentence Hunsaker on count II in accordance with section 18-1.3-406, C.R.S. (2014), the mandatory sentencing statute for crimes of violence; (2) section 18-1.3-406 identifies a bottom-end sentencing range between the midpoint in, but not more than twice the maximum of, the presumptive range, which is eight to twenty-four years; and (3) the sentence for count II was lawful because it fell within this range.

¶5 The post-conviction court granted Hunsaker's Rule 35(a) motion. As to count I, the court determined that sexual assault on a child is not an extraordinary risk crime; therefore, the statutory presumptive range of two to six years applied. As to count II, the court concluded that it could not increase the maximum term on the bottom end to more than the presumptive maximum of twelve years. Consequently, the court reduced Hunsaker's sentence on each count to the maximum presumptive terms: six years to life and twelve years to life, respectively. The court held that because this order correcting his sentences triggered the filing deadline under Crim. P. 35(b), his alternative Rule 35(b) motion was premature.

¶6 The prosecution appealed the post-conviction court's order. In response, Hunsaker

argued: (1) a finding of aggravating circumstances must support a bottom-end sentence that exceeds the presumptive maximum; (2) the prosecution could not appeal the propriety of a corrected sentence; and (3) an illegal sentence on one count entitled him to resentencing on both counts. The court of appeals resolved these issues in the prosecution's favor. *See People v. Hunsaker*, 2013 COA 5, —— P.3d ——.

¶ 7 First, the court of appeals held that the mandatory sentencing statute, section 18–1.3–406, does not require the prosecution to establish aggravating circumstances where the defendant's conviction is for a sex offense that constitutes a crime of violence. *Id.* at ¶ 40. It reasoned that sexual assault on a child—pattern of abuse constitutes a "per se" crime of violence, which "is itself an extraordinary aggravating circumstance that requires [bottom-end] sentencing in the aggravated range" of between the midpoint in, but not more than twice the maximum of, the presumptive range—here, eight to twenty-four years. *Id.* (citing § 18–1.3–401(8)(a)(I)). The court of appeals then vacated the postconviction court's minimum twelve-year sentence on count II and reinstated the trial court's sentence of sixteen years to life. *Id.* at ¶ 46.

¶ 8 Second, the court of appeals concluded that under section 16–12–102(1), C.R.S. (2014), the prosecution can appeal "any decision of a court in a criminal case upon any question of law." *Id.* at ¶ 18. The court held that whether the post-conviction court miscalculated the sentencing range for count II in ruling on Hunsaker's Rule 35(a) motion "falls squarely within the ambit of section 16–12–102(1)." *Id.*

¶ 9 Third, the court of appeals held that if a court can correct an illegal sentence on a count merely by removing the excess time that renders the sentence illegal, a defendant is not entitled to resentencing on other counts with legal sentences. *Id.* at ¶¶ 21–22. Thus, count I's illegal sentence did not implicate count II's legal sentence. *Id.* at ¶ 22. Although Hunsaker also questions whether the resentencing court can nonetheless reconsider and reduce his legal sentence under Crim. P. 35(b), the court of appeals did not address this issue when it instructed the resentencing court to reinstate the sixteen-year sentence on count II. *Id.* at ¶ 46.

¶ 10 We granted Hunsaker's petition for certiorari.[1]

## II. Standard of Review

■■■■ ¶ 11 Statutory interpretation is a question of law that we review de novo. *People v. Garcia*, 113 P.3d 775, 780 (Colo. 2005). Our goal is to effectuate the legislature's intent. *Stamp v. Vail Corp.*, 172 P.3d 437, 444 (Colo.2007). If statutory language is clear, we apply its plain and ordinary meaning. *Williams v. Kunau*, 147 P.3d 33, 36 (Colo.2006). "If the statute is reasonably susceptible to multiple interpretations, it is ambiguous and we determine the proper construction by examining the legislative intent, the circumstances surrounding its adoption, and possible consequences of various constructions." *Id.*

## III. Analysis

¶ 12 In 1998, the General Assembly adopted the LSA to ensure that, when necessary, convicted sex offenders receive treatment and supervision for the remainder of their lives. § 18–1.3–1001 ("Legislative declaration"). The Act therefore clearly established indeterminate sentencing. As pertinent here, it mandates a top-end, or maximum, sentence of the defendant's natural

1. We granted certiorari to review the following issues:
   1. Whether a minimum term in the aggravated range for an indeterminate life sentence on a conviction for sexual assault on a child—pattern of abuse is a legal sentence when there has been no finding of aggravated circumstances.
   2. Whether the prosecution may appeal the propriety of a legal sentence entered on resentencing.

   3. Whether the acknowledged illegality of a sentence on one count renders the entire sentence illegal and entitles a defendant to resentencing on all counts of conviction.
   4. Whether, where a defendant is entitled to be resentenced due to the illegality of a sentence on one count, the resentencing court has jurisdiction to reconsider and reduce the sentence on another count of conviction pursuant to Crim. P. 35(b).

life and a bottom-end, or minimum, sentence within a "presumptive range." § 18–1.3–1004.

¶ 13 What is less clear is the interplay between the LSA and Colorado's pre-existing mandatory sentencing statute for crimes of violence, now codified at section 18–1.3–406. Under the mandatory sentencing statute, those convicted of a crime of violence must be sentenced for a term of incarceration of at least the midpoint in, but not more than twice the maximum of, the presumptive range provided for such offense. § 18–1.3–406. The span between the top of the presumptive range and twice that is generally referred to as the "aggravated range." It is that aggravated range that is at issue here.

¶ 14 Because it represents the heart of this case, we first address whether a bottom-end sentence in the aggravated range on a conviction for sexual assault on a child—pattern of abuse (count II) is legal when there has been no explicit finding of aggravating circumstances. To answer this question, we examine the statute defining the offense and the language of section 18–1.3–406. Because that language is ambiguous, we consult traditional statutory construction aids to discern legislative intent. We conclude that sexual assault on a child—pattern of abuse is a per se crime of violence with a bottom-end mandatory sentencing range of the midpoint in the presumptive range for that offense to twice the maximum of the presumptive range, or eight to twenty-four years. Therefore, the trial court's original sentence on this count was legal.

¶ 15 We then address related procedural matters. We evaluate the prosecution's ability to appeal the post-conviction court's corrected sentence. Because the prosecution has challenged the legal basis for the range the post-conviction court used to impose the sentence, the appeal is proper. We also assess the resentencing court's authority to reconsider the sentence for count II under both Crim. P. 35(a) and (b), given the parties' agreement that the trial court's initial sentence as to count I was illegal. We hold that under Crim. P. 35(a), the illegality of a sentence on one count does not entitle a defendant to resentencing on other counts with

legal sentences, but if a sentence is subject to correction on one count, Crim. P. 35(b) authorizes a resentencing court to reconsider and reduce the legal sentences as to all counts after it has corrected the entire sentence.

## A. Sexual Assault on a Child—Pattern of Abuse Is Subject to Mandatory Sentencing

■ ¶ 16 We first consider whether sexual assault on a child—pattern of abuse is subject to the same range, on the bottom end, as any other crime of violence. We conclude that it is.

■ ¶ 17 Colorado's sentencing scheme divides felonies into six classes, which are distinguished from one another by the range of penalties that each carries (i.e. the presumptive sentencing range). § 18–1.3–401(1)(a)(V)(A). In a case with extraordinary mitigating or aggravating circumstances, a court may sentence an offender "to as little as half the minimum of the presumptive range or as much as twice the maximum of the presumptive range for the class of felony of which a defendant stands convicted." *Vensor v. People*, 151 P.3d 1274, 1276 (Colo. 2007) (citing § 18–1.3–401(6)). Hunsaker contends that count II does not permit a minimum sentence in the aggravated range. We disagree. The pattern offense is a per se crime of violence, which is subject to a minimum sentence between the presumptive midpoint and twice the presumptive maximum.

### 1. Section 18–1.3–406 Is Ambiguous

¶ 18 Sexual assault on a child is a class 4 felony, but when it is committed as a pattern of abuse, the crime becomes a class 3 felony that requires sentencing under section 18–1.3–406, the mandatory sentencing statute. § 18–3–405(2)(d)–(3). It is what we have termed a "per se" crime of violence. *See Terry v. People*, 977 P.2d 145, 149 (Colo.1999) (defining per se crimes of violence as those crimes for which a court must sentence a defendant in accordance with the mandatory

sentencing statute (citing *People v. Terry,* 791 P.2d 374, 379 (Colo.1990))).[2]

¶ 19 Subsection 18–1.3–406(1) of the mandatory sentencing statute differentiates between crimes of violence that involve sex offenses and those that do not. Paragraph (1)(a), which governs crimes of violence generally (i.e. non-sex-related offenses), states: "Any person convicted of a crime of violence shall be sentenced pursuant to the provisions of section 18–1.3–401(8) ... for a term ... of *at least the midpoint in, but not more than twice the maximum of, the presumptive range* provided for such offense ...." § 18–1.3–406(1)(a) (emphasis added). Paragraph (1)(b), which governs crimes of violence involving sex offenses, states:

> [A]ny person convicted of a sex offense ... that constitutes a crime of violence shall be sentenced ... for an indeterminate term ... of *at least the midpoint in the presumptive range* specified in section 18–1.3–401(1)(a)(V)(A) *up to a maximum of the person's natural life,* as provided in section 18–1.3–1004(1).

§ 18–1.3–406(1)(b) (emphasis added); *see also* § 18–1.3–1004(1)(b). The parties urge different constructions of these provisions and debate whether the General Assembly intended to prescribe a different sentencing standard for the bottom end of a crime of violence involving a sex offense.

¶ 20 Under Hunsaker's reading, which the post-conviction court adopted, paragraphs (1)(a) and (1)(b) mandate different sentences. Hunsaker argues that the general crime of violence paragraph, (1)(a), requires courts to sentence defendants to a bottom-end sentence between the midpoint in, but not more than twice the maximum of, the presumptive range. If Hunsaker were subject to sentencing under this paragraph, the bottom end of his sentence for count II (a class 3 felony with a presumptive range of four to twelve years) would be eight to twenty-four years. He agrees that under the sex offense paragraph, (1)(b), the minimum term in his bot-

tom-end sentence likewise increases to the presumptive midpoint, but he contends the maximum term in the presumptive range does not change. He reasons that, unlike (1)(a), paragraph (1)(b) does not state that the maximum term in the bottom end can be twice the maximum of the presumptive range. Hunsaker thus concludes the post-conviction court rightly determined count II's sentencing range is eight to twelve years.

¶ 21 The prosecution contends this narrow reading is inconsistent with the plain language of the overall statutory scheme, which reflects legislative intent to provide an expansive sentencing framework for sex offenses. It postulates that, read in context, paragraph (1)(b) requires sentencing under the same standard delineated in paragraph (1)(a) for general crimes of violence: a term between the midpoint in, and twice the maximum of, the presumptive range—here, eight to twenty-four years.

¶ 22 Because the mandatory sentencing statute is susceptible to either of these reasonable interpretations, we conclude that paragraph (1)(b) is ambiguous. We therefore look beyond its plain language to resolve the ambiguity.

### 2. No Legislative Intent for the LSA to Alter Mandatory Sentencing

¶ 23 The pre-LSA version of the mandatory sentencing statute made no distinction between violent sex offenses and non-sex-related violent offenses. Rather, a defendant convicted of sexual assault on a child—pattern of abuse was sentenced to at least the presumptive midpoint but not more than twice the presumptive maximum. Ch. 240, sec. 11, § 18–3–405(3), 1995 Colo. Sess. Laws 1250–51 (referencing the predecessor mandatory sentencing statute, section 16–11–309).

¶ 24 When the General Assembly enacted the LSA in 1998, it distinguished between violent sex offenses and non-sex-relat-

---

**2.** Section 18–1.3–406(2) defines "crime of violence" as (1) one of several enumerated crimes that involved the use of a deadly weapon or caused serious bodily injury or death, or (2) an "unlawful sexual offense" that caused bodily injury or in which the defendant used threat, intimidation, or force against the victim. We have held, however, that a per se crime of violence requires sentencing under section 18–1.3–406 even if the offense does not meet this statutory definition. *People v. Banks,* 9 P.3d 1125, 1130 (Colo.2000).

ed violent offenses by adding what is now paragraph (1)(b) to the mandatory sentencing statute: "[A]ny person convicted of a sex offense ... that constitutes a crime of violence shall be sentenced to an indeterminate term of incarceration of at least the midpoint in the presumptive range up to a maximum of the person's natural life." Ch. 303, sec. 9, § 16–11–309(1)(c), 1998 Colo. Sess. Laws 1291 (codified as amended at § 18–1.3–406(1)(b)).[3] The Act's sponsor emphasized, however, that the LSA was not intended to alter then-existing sentencing guidelines, other than to allow for lifetime supervision. *See Vensor*, 151 P.3d at 1279 (citing *Hearing on H.B. 98–1156 Before the House Judiciary Committee*, 61st Legis. 2nd Reg. Sess. (Jan. 27, 1998)).[4] While a sponsor's words regarding the purpose of a bill are not conclusive, they can be powerful evidence of legislative intent. *Id.* They are a "strong indication" here. *See id.*

¶ 25 Moreover, "[w]hile the legislature has typically included the words, 'but not more than twice the maximum term authorized in the presumptive range,' to emphasize that its modification of the lower end of the sentencing range has no effect on its upper limits, this is not always the case." *Id.* The legislature sometimes leaves the upper limit to be inferred from its specific reference to the presumptive sentencing scheme of section 18–1.3–401. *See id.* (citing § 18–6.5–103(4), C.R.S. (2014) ("If the offender is convicted of robbery of an at-risk adult or an at-risk juvenile, the court shall sentence the defendant to the department of corrections for at least the presumptive sentence under 18–1.3–401(1)."); § 18–1.3–401(1)(b)(II) ("[E]xcept that any person who has been twice convicted of a felony ... shall be sentenced to at least the minimum sentence specified in [the presumptive ranges of section 18–1.3–401(1)(a)(V)(A) ] ...."); § 18–1.3–401(1)(a)(III)(E) ("[A] person who has been twice convicted of a felony ... shall be sen-

tenced to at least the minimum sentence specified [in the presumptive ranges of section 18–1.3–401(1)(a)(V)(A)] ....")).

¶ 26 In interpreting an ambiguous statute, we also consider the consequences of possible interpretations. *See* § 2–4–203(1)(e), C.R.S. (2014); *Stamp*, 172 P.3d at 443. Adopting Hunsaker's interpretation would drastically limit the discretion of sentencing courts to consider aggravating circumstances and differentiate among sex offenders. *See Vensor*, 151 P.3d at 1278 (rejecting a proposed statutory interpretation that would be inconsistent with sentencing courts' discretion). Narrowly confining sentencing courts to a minimum term of eight to twelve years in every case involving a class 3 felony sex offense against a child is antithetical to the legislature's goal of increasing sentencing options in this context.

¶ 27 We therefore conclude that in enacting the LSA, the General Assembly did not intend to change mandatory sentencing for violent sex offenses. Paragraph (1)(b) simply dictates that violent sex crimes, unlike violent crimes generally, are also subject to indeterminate life sentencing; it does not alter the bottom-end sentencing range.

### B. The Prosecution May Appeal the Legal Correctness of a Sentencing Range

¶ 28 We now turn to Hunsaker's argument that the prosecution may not appeal the "propriety" of the sentence the post-conviction court imposed on count II. His argument hinges on a false premise. The prosecution does not challenge the sentence's propriety in the sense of questioning the court's exercise of discretion; the prosecution challenges the legal correctness of the sentencing range from which the court derived count II's sentence. Therefore, the prosecutorial appeal here is proper.

---

**3.** In 2002, the legislature amended and relocated the mandatory sentencing statute to its current section, 18–1.3–406. *See* ch. 318, sec. 3, 2002 Colo. Sess. Laws 1365.

**4.** In *Vensor*, we held that the maximum term in a defendant's bottom-end sentence may exceed the presumptive maximum "as a result of extraordi-

nary aggravating circumstances." *Id.* at 1279–80. But we did not evaluate the mandatory sentencing statute. *Vensor* does not resolve how section 18–3–405 ("Sexual assault on a child") interfaces with paragraph (1)(b) of the mandatory sentencing statute.

¶ 29 "The prosecution may appeal any decision of a court in a criminal case upon any question of law." § 16–12–102(1). We have consistently held that appeals made under this section are limited to purely legal questions. *See, e.g., People v. Martinez,* 22 P.3d 915, 919–21 (Colo.2001) (dismissing the prosecution's appeal where the resolution of the issues "turned on decisions of fact" rather than on a question of law); *People v. Tharp,* 746 P.2d 1337, 1339 (Colo.1987) (dismissing the prosecution's appeal that "merely raise[d] factual and evidentiary questions well within the discretion of the [trial] court"). Here, the prosecution argued on appeal that the post-conviction court miscalculated the sentencing range for count II—an issue that turns on the proper interpretation of the applicable sentencing statutes and case law. Statutory interpretation is categorically a question of law. *Garcia,* 113 P.3d at 780. Accordingly, the prosecution could appeal the legal correctness of the sentencing range used by the post-conviction court.

## C. Count I's Illegality Does Not Entitle the Defendant to Resentencing on Count II Under Crim. P. 35(a)

¶ 30 The parties agree that the initial sentence the trial court imposed on count I was illegal. Hunsaker argues that count I's illegality entitles him to resentencing on count II under Crim. P. 35(a). We disagree.

¶ 31 Crim. P. 35(a) provides: "The court may correct a sentence that was not authorized by law or that was imposed without jurisdiction at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." This court has held that if any component of a sentence is illegal, the entire sentence is illegal and subject to correction under Crim. P. 35(a). *Leyva v. People,* 184 P.3d 48, 50 (Colo.2008) (citing *Delgado v. People,* 105 P.3d 634, 637 (Colo.2005)).

¶ 32 Hunsaker, citing *Delgado,* 105 P.3d at 637, reasons that because a sentence cannot be parsed into legal and illegal components when assessing its legality, a resentencing court is precluded from resentencing only the illegal components upon correcting a sentence. We reject this argument. While an illegal sentence on one count renders the entire sentence illegal, the illegality does not necessarily entitle the defendant to resentencing on the counts with legal sentences. Nothing in our precedent or Crim. P. 35(a)'s language suggests that a court *must* resentence the defendant as to all counts with legal sentences.

¶ 33 Sentences can be illegal in different ways, and the nature of the illegality will dictate how courts correct those sentences. *Delgado,* 105 P.3d at 637. For example, if a "sentencing court imposes a definite sentence in excess of the statutory maximum, the sentence can be corrected by removing that excess." *Hunsaker,* ¶ 22 (citing *Delgado,* 105 P.3d at 637); *accord Abeyta v. People,* 112 Colo. 49, 145 P.2d 884, 885 (1944) ("[W]here a judgment sentencing one convicted of crime is merely excessive ... the sentence is not void *in toto* because of the excess ... [it] is invalid only as to the excess." (citing *Martin v. Dist. Court,* 37 Colo. 110, 86 P. 82, 84 (1906))). Such is the case here.

¶ 34 Because Hunsaker's sentence of eight years to life on count I was illegal, the post-conviction court can correct that portion of the sentence by reducing the bottom end to a term within the statutorily permissible range.[5] Count II is unaffected. Whether reconsideration is appropriate under Crim. P. 35(b), however, is a separate question.

## D. Crim. P. 35(b) Authorizes the Resentencing Court to Reconsider Count II's Sentence

¶ 35 Hunsaker asserts that when Crim. P. 35(a) requires a court to resentence a defendant on one count with an illegal sentence, Crim. P. 35(b) authorizes the court to also reconsider and reduce a legal sen-

---

**5.** We recognize that due to the nature of Hunsaker's charges, the resentencing court cannot simply correct the mittimus but must hold a sentencing hearing in accordance with the Victims' Rights Act. *See* § 24–4.1–302.5(1)(d)(V), C.R.S. (2014) (stating that a victim of a crime shall have the right to be heard at any court proceeding at which the sentence of a person convicted of a crime against the victim is modified).

tence imposed on another count. The prosecution objects and maintains that a court may not consider a Rule 35(b) motion contemporaneously with a Rule 35(a) motion. Both arguments have merit.

¶ 36 Crim. P. 35(b) permits a court to reduce a sentence within 126 days [6] after: (1) the sentence is imposed; (2) the court has received a remittitur affirming the judgment or sentence or dismissing the appeal; or (3) the appellate court has entered any order or judgment denying review or upholding the judgment of conviction or sentence.[7] In *Delgado*, we held that Crim. P. 35(b) permits a sentencing court to modify a *corrected* sentence "when any portion of the original sentence did not fully comply with statutory requirements and a motion for reduction of sentence has been filed within 120 days of the *new, legal sentence's imposition*." 105 P.3d at 636 (emphasis added). That is, a Rule 35(b) motion is not appropriate, and the 126–day clock does not begin running, until the court first determines the sentence is legal or imposes a legal sentence. In other words, a Rule 35(b) motion presumes a legal sentence.

¶ 37 Where a defendant files a motion under Crim. P. 35(a) and an alternative motion under Crim. P. 35(b) and the court grants the Rule 35(a) motion because the sentence contains an illegal component, the Rule 35(b) motion is rendered premature. But *Delgado* and Crim. P. 35(b) make clear that a defendant may renew the motion within 126 days of the court's order correcting the sentence or the court may, within the 126–day timeframe, reconsider and reduce the entire sentence on its own initiative.

¶ 38 We hold that if a sentence is subject to correction on one count under Crim. P. 35(a), Crim. P. 35(b) authorizes a resentencing court to reconsider and reduce the legal sentences as to all counts once it has corrected the entire sentence. Therefore, although the post-conviction court here could have, on its own initiative, considered Hunsaker's Rule 35(b) motion after it corrected his sentence, it was not required to do so. At the same time though, the appeals that followed in this case suspended the finality of Hunsaker's sentence. Thus, within 126 days of the issuance of the mandate, Hunsaker may renew his Rule 35(b) motion or the post-conviction court may reduce count II's sentence on its own initiative.

## IV. Conclusion

¶ 39 We hold: (1) when a conviction is for a sex offense that requires sentencing in accordance with the mandatory sentencing statute, the prosecution is not required to prove aggravating circumstances to support a bottom-end sentence in the aggravated range; (2) the prosecution here is authorized to appeal the post-conviction court's ruling on Hunsaker's Rule 35(a) motion because it challenges the legal basis for the range the post-conviction court used to impose the sentence; (3) under Crim. P. 35(a), the illegality of a sentence on one count does not entitle a defendant to resentencing on other counts with legal sentences; and (4) if a sentence is subject to correction on one count, Crim. P. 35(b) authorizes a resentencing court to reconsider and reduce the legal sentences as to all counts after it has corrected the entire sentence.

¶ 40 We therefore affirm the judgment of the court of appeals reversing and remanding the case to the post-conviction court to reinstate Hunsaker's sentence of sixteen years to life on count II. However, on remand to the

---

6. When Hunsaker filed his motion under Crim. P. 35(a) and (b), the deadline for the defendant or trial court to move for a reduction of the sentence was within *120* days after the sentences became final. *See* Crim. P. 35(b) (2010).

7. Crim. P. 35(b) now states:
   The court may reduce the sentence provided that a motion for reduction of sentence is filed (1) within 126 days (18 weeks) after the sentence is imposed, or (2) within 126 days (18 weeks) after receipt by the court of a remittitur issued upon affirmance of the judgment or sentence or dismissal of the appeal, or (3) within 126 days (18 weeks) after entry of any order or judgment of the appellate court denying review or having the effect of upholding a judgment of conviction or sentence. The court may, after considering the motion and supporting documents, if any, deny the motion without a hearing. The court may reduce a sentence on its own initiative within any of the above periods of time.

post-conviction court, Hunsaker may seek reconsideration of his sentence under Crim. P. 35(b).