Colorado Court of Appeals Opinions || April 7, 2016

Colorado Court of Appeals -- April 7, 2016
2016 COA 50. No. 14CA1337. People v. Yoder.

 
 
 
 COLORADO COURT OF APPEALS

 
 2016 COA 50

 
 

 Court of Appeals No. 14CA1337
 Mesa County District Court Nos. 13CR877, 13CR1502 & 14CR21
 Honorable Brian J. Flynn, Judge

 The People of the State of Colorado,

 Plaintiff-Appellee,

 v.

 Charles Edward Yoder,

 Defendant-Appellant. 

 SENTENCES AFFIRMED 

 Division II
 Opinion by JUDGE BOORAS
 Dailey and Navarro, JJ., concur

 Announced April 7, 2016

 Cynthia H. Coffman, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 Douglas K. Wilson, Colorado State Public Defender, Kamela Maktabi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

 ¶1       Defendant, Charles Edward Yoder, appeals the district court’s ruling at sentencing that mandatory protection orders (MPOs) would continue to remain in effect. He contends that the MPOs are invalid generally and that the district court lacked the statutory authority to impose certain conditions in the MPOs. We affirm.

 I. Background

 ¶2       In Mesa County case number 13CR877, the People charged defendant with possession of a controlled substance (methamphetamine), driving after revocation prohibited, and possession of drug paraphernalia. In Mesa County case number 13CR1502, the People charged him with criminal impersonation and false reporting. And in Mesa County case number 14CR21, he was charged with possession of a controlled substance (methamphetamine), driving after revocation prohibited, possession of drug paraphernalia, and two counts of violation of bail bond conditions.

 ¶3       In each of the three cases, the district court issued a MPO under section 18-1-1001, C.R.S. 2015. Each MPO contained the following three conditions:

 
 defendant "[s]hall not harass, molest, intimidate, retaliate against, or tamper with any witness to or victim of the acts charged";
 
 defendant "[s]hall not possess or consume . . . controlled substances without a doctor’s prescription"; and
 
 "[n]o driving without a valid driver’s license."

 ¶4       Two of the MPOs also prohibited defendant from possessing or consuming marijuana "without a doctor’s prescription [sic]" (among other conditions).[1]

 ¶5       Defendant ultimately pleaded guilty to possession of a controlled substance in both 13CR877 and 14CR21, and false reporting in 13CR1502.

 ¶6       At the combined sentencing hearing, the district court sentenced defendant to eighteen months in prison and one year of mandatory parole in 13CR877, and imposed shorter, concurrent sentences in the other two cases. The court also clarified that the conditions of the MPOs would remain in effect until defendant completed his sentences:

 [T]he protection orders do remain in effect throughout the period of Mr. Yoder’s sentences. Those do prohibit him from harassing, molesting, intimidating, retaliating against, or tampering with any witness to or victim of the acts charged. He’s also not to possess or consume marijuana or controlled substances without a doctor’s prescription [sic]. He’s not to drive any motor vehicles without a valid driver’s license.

 [W]e are objecting to conditions that he refrain from marijuana use as well as driving. We do not believe either of those conditions [is] necessary to protect any victim or witness to any of these charged offenses, so we believe they’d be inappropriate to continue at this point. So, we would just lodge our objection to those conditions.

 ¶8       However, defense counsel then clarified: "Obviously, the standard protection order, we do not object to that portion of that remaining while sentence continues. That’s . . . clearly authorized by law, so we are aware of that. It’s the extra conditions that we’d object to as conditions of the protection order."

 ¶9       The district court overruled the objection, explaining, "I am overruling that objection given the nature and circumstances of these offenses. I find they’re necessary to protect the community."

 II. Analysis

 ¶10       Defendant contends that the MPOs are invalid generally because the cases did not involve any victims or witnesses who needed protection. We deem this particular contention to have been waived in the district court. At the sentencing hearing, defense counsel specifically stated that he was not objecting to the "standard protection order[s]," but instead was only objecting to the specific conditions regarding marijuana and driving. This affirmative acquiescence waived any claim that the MPOs are invalid as a general matter. See People v. Rediger, 2015 COA 26, ¶¶49-64 (discussing waiver of an issue based on defense counsel’s affirmative acquiescence) (cert. granted Feb. 15, 2016).

 ¶11       Defendant also contends that the district court lacked the statutory authority to impose the conditions in the MPOs prohibiting defendant from possessing or using drugs, or driving without a valid driver’s license (the drug and driving conditions).

 ¶12       Because this preserved contention presents a question of statutory interpretation, our review is de novo. Hunsaker v. People, 2015 CO 46, ¶11. If statutory language is clear, we apply its plain and ordinary meaning. Id. Only where statutory language is ambiguous do we resort to other aids of statutory interpretation. See id.

 A. Protection Orders Under Section 18-1-1001

 ¶13       Section 18-1-1001(1) provides for a mandatory protection order against any person charged with a Title 18 offense:

 There is hereby created a mandatory protection order against any person charged with a violation of any of the provisions of this title, which order shall remain in effect from the time that the person is advised of his or her rights at arraignment or the person’s first appearance before the court and informed of such order until final disposition of the action. Such order shall restrain the person charged from harassing, molesting, intimidating, retaliating against, or tampering with any witness to or victim of the acts charged.

 ¶14       Section 18-1-1001(3) provides for modification of a protection order. The initial part of subsection (3) provides broad authority for the trial court to dismiss or modify a protection order required under subsection (1):

 Nothing in this section shall preclude the defendant from applying to the court at any time for modification or dismissal of the protection order issued pursuant to this section or the district attorney from applying to the court at any time for further orders, additional provisions under the protection order, or modification or dismissal of the same. The trial court shall retain jurisdiction to enforce, modify, or dismiss the protection order until final disposition of the action.

 ¶15       Defendant’s contention is based on the latter part of subsection (3), which provides:

 Upon motion of the district attorney or on the court’s own motion for the protection of the alleged victim or witness, the court may, in cases involving domestic violence as defined in section 18-6-800.3(1) and cases involving crimes listed in section 24-4.1-302, C.R.S., except those listed in paragraphs (cc.5) and (cc.6) of subsection (1) of that section, enter any of the following further orders against the defendant:

 (a) An order to vacate or stay away from the home of the alleged victim or witness and to stay away from any other location where the victim or witness is likely to be found;

 (c) An order prohibiting possession or control of firearms or other weapons;

 (d) An order prohibiting possession or consumption of alcohol or controlled substances; and

 (e) Any other order the court deems appropriate to protect the safety of the alleged victim or witness.

 ¶16       According to defendant, because this statutory provision authorizes a district court to impose the additional enumerated conditions in domestic violence cases and in certain Victims’ Rights Act cases, the statute prohibits the district court from imposing any such conditions in his cases (which did not involve domestic violence and did not fall under the Victims’ Rights Act).

 B. Interpretation of the Statute as a Whole

 ¶17       Ordinarily, specific language in a statute acts to restrict more general language. See People v. Campbell, 885 P.2d 327, 329 (Colo. App. 1994) ("[W]hen a statute specifies the particular situations in which it is to apply, it should generally be construed as excluding from its operation all other situations not specified."). On the other hand, we must also look at the statute as a whole in order to interpret the meaning and purpose of its language. See Curtis v. Hyland Hills Park & Recreation Dist., 179 P.3d 81, 83 (Colo. App. 2007). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)).

 ¶18       Looking at the statute as a whole, subsection (3) is referenced in section 18-1-1001(5), which refers to "additional provisions added pursuant to subsection (3) of this section," and provides for special procedures that would apply to MPOs issued in domestic violence cases. This later reference to subsection (3) creates ambiguity as to the purpose of the statutory language defendant relies upon — whether it was intended as restrictive language as defendant contends, or whether it was intended to set out the additional provisions that are subject to the enhanced procedural protections contained in subsection (5). Because the intended purpose of the language in subsection (3) is unclear, we may apply other rules of statutory construction and look to pertinent legislative history to determine its intended scope. See People v. Terry, 791 P.2d 374, 376 (Colo. 1990).

 ¶19       Looking at the legislative history, we disagree with defendant’s interpretation that the language in the latter part of subsection (3) restricts the language which precedes it. First, we note that the latter part of section 18-1-1001(3), upon which defendant relies, was added by amendment in 1994 (and at that time applied only to domestic violence cases). See Ch. 327, sec. 24, § 18-1-1001(3), 1994 Colo. Sess. Laws 2041-42. The plain language of section 18-1-1001(3) does not specifically state that the added language was intended to limit the broad authority to add conditions to a MPO that had existed before the amendment. Moreover, other subsections of section 18-1-1001 provide insight into the purpose of the language added by the 1994 amendment.

 ¶20       In the same legislation that added the latter part of section 18-1-1001(3), the General Assembly also created special procedures that would apply to MPOs issued in domestic violence cases. See § 18-1-1001(5), (6), 1994 Colo. Sess. Laws at 2042.2 These procedures specifically included informing a defendant of "any additional provisions added pursuant to subsection (3)." Id. at § 18-1-1001(5). This reference back to subsection (3) indicates that the original purpose of the language in the latter part of section 18-1-1001(3) referring to "further orders" in domestic violence cases was to specify what conditions would trigger additional notice and hearing requirements in domestic violence cases. But that does not mean such additional conditions could not be added in other Title 18 cases.

 ¶21       Thus, based on the legislative history of the statute, and reading section 18-1-1001 as a whole in light of that legislative history, we disagree with defendant’s interpretation. See Reno v. Marks, 2015 CO 33, ¶20 ("[W]e examine . . . statutory language in the context of the statute as a whole and strive to give ‘consistent, harmonious, and sensible effect to all parts.’" (quoting Denver Post Corp. v. Ritter, 255 P.3d 1083, 1088-89 (Colo. 2011))).

 ¶22       As discussed above, the first two sentences of section 18-1-1001(3), providing for broad authority to modify an MPO, also apply generally to every MPO issued in a Title 18 case. The statute read as a whole indicates that the specific conditions pertaining to domestic violence cases and certain Victims’ Rights Act cases are referenced in subsection (3), not as a restriction on that broad authority, but rather to set out what conditions are subject to the special procedural requirements of subsections (5) and (6).

 ¶23       Thus, the drug and driving conditions in the MPOs at issue did not violate section 18-1-1001.

 III. Conclusion

 ¶24       The sentences are affirmed.

 JUDGE DAILEY and JUDGE NAVARRO concur.

 [1] Although the district court referred to a doctor’s "prescription," "a physician does not prescribe marijuana, but may only provide ‘written documentation’ stating that the patient has a debilitating medical condition and might benefit from the medical use of marijuana." Beinor v. Indus. Claim Appeals Office, 262 P.3d 970, 973 (Colo. App. 2011); see Colo. Const. art. XVIII, § 14(2)(c)(II).

 [2] These sections were later amended in 2012 to add stalking and again in 2015 to add sexual offense cases. See Ch. 176, sec. 3, § 18-1-1001, 2012 Colo. Sess. Laws 632; Ch. 45, sec. 2, § 18-1-1001, 2015 Colo. Sess. Laws 112-13.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Court of Appeals Opinions || April 7, 2016

Back