18CA2246 Peo v Peiffer 12-16-2021 COLORADO COURT OF APPEALS Court of Appeals No. 18CA2246 Douglas County District Court No. 17CR528 Honorable Shay K. Whitaker, Judge The People of the State of Colorado, Plaintiff-Appellee, v. James E. Peiffer, Defendant-Appellant. JUDGMENT AND SENTENCE AFFIRMED Division V Opinion by JUDGE HARRIS Richman and Gomez, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced December 16, 2021 Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee James E. Peiffer, Pro Se 
1 ¶ 1 Defendant, James E. Peiffer, appeals the judgment of conviction and sentence entered after a jury found him guilty of two counts of sexual assault on a child as part of a pattern of sexual abuse. ¶ 2 He contends that the evidence was insufficient to support his convictions, the trial court admitted irrelevant and unfairly prejudicial evidence, and his sentence is unlawful. We affirm. I. Background ¶ 3 In April 2017, while then-seven-year-old K.B. was playing an “airplane” game with her mother, she disclosed that Peiffer, her maternal grandfather, had touched her chest area. Mother informed K.B.’s father, who recorded a conversation with K.B. about her allegations. During the conversation with father, K.B. said that Peiffer had put his hands inside her shirt and felt her “boobs” and had “sometimes” felt her nipples. According to K.B., Peiffer only touched her when they were alone, and he had told her to keep the touching a secret. ¶ 4 Father reported Peiffer’s conduct to the police. During a subsequent forensic interview, K.B. said that Peiffer had touched her chest area multiple times beginning on her seventh birthday 
2 (June 2016) and continuing until Easter (April 2017) — just a few days before her disclosure to mother. K.B. told the interviewer that the touching made her uncomfortable and that she had asked Peiffer to stop. ¶ 5 Peiffer agreed to speak to police. He admitted that he had touched K.B.’s chest but denied that the touching was for the purpose of sexual arousal or gratification, insisting that he was simply showing affection for his granddaughter. ¶ 6 The People charged Peiffer with two counts of sexual assault on a child as part of a pattern of sexual abuse. One count related to an alleged incident on K.B.’s seventh birthday and the other related to an alleged incident on Easter. ¶ 7 At trial, the prosecution introduced K.B.’s forensic interview and Peiffer’s interview with the detective. K.B., who was nine years old at the time of trial, also testified. Some of her testimony was inconsistent with her statements in the forensic interview. For example, she testified that “nothing really happened on Easter,” and she said that she was not sure whether she had ever told Peiffer to stop touching her. She acknowledged that her recollection of events 
3 was better when she first spoke to mother and father, which was over a year before trial. ¶ 8 The jury found Peiffer guilty of both counts. After filing a notice of appeal in this court, Peiffer filed post-trial motions in the trial court. A limited remand was ordered, and, on remand, the trial court denied all of the post-trial motions.
1 II. Sufficiency of the Evidence ¶ 9 Peiffer’s primary contention on appeal is that the evidence was insufficient to support his convictions because (1) he did not touch “the breast of any person,” as required to prove sexual assault in this case, and (2) the prosecution failed to prove that he touched K.B. for the purpose of “sexual arousal, gratification, or abuse.” A. The Evidence Was Sufficient to Show That Peiffer Touched K.B.’s Breasts 1. Standard of Review ¶ 10 Peiffer’s first challenge to the sufficiency of the evidence turns on the meaning of the term “breast” in section 18-3-401(2), C.R.S. 1 This court granted Peiffer’s motion for limited remand to allow the trial court to rule on his pending motions. Therefore, Peiffer’s claim that the court of appeals “determined [his] conviction was the result of serious errors that occurred during [his] trial” is incorrect. 
4 2021. Statutory interpretation is a question of law that we review de novo. People v. Campos, 2015 CO 47, ¶ 11. The primary purpose in interpreting statutes is to give effect to the General Assembly’s intent. Hunsaker v. People, 2015 CO 46, ¶ 11. If statutory language is clear, we apply its plain and ordinary meaning. Id. However, if the statute is subject to multiple reasonable interpretations, we enlist tools of statutory interpretation to discern the legislature’s intent and consider factors like prior law, the goal of the statutory scheme, and the consequences of a particular construction. See In re Marriage of Ikeler, 161 P.3d 663, 668 (Colo. 2007). 2. Discussion ¶ 11 A person commits sexual assault on a child if he knowingly subjects a child under the age of fifteen to any “sexual contact.” § 18-3-405(1), C.R.S. 2021. As relevant here, “sexual contact” means “[t]he knowing touching of the victim’s intimate parts by the actor . . . for the purposes of sexual arousal, gratification, or abuse.” § 18-3-401(4)(a). And “intimate parts” includes “the breast of any person.” § 18-3-401(2). 
5 ¶ 12 Peiffer contends that he did not commit sexual assault on a child because he did not touch K.B.’s “breast.” According to Peiffer, the statutory term “breast of any person” refers to a developed breast and at the time of the assaults, seven-year-old K.B. had undeveloped breasts. ¶ 13 In support of his interpretation, he points to the sexual exploitation of a child statute. See § 18-6-403, C.R.S. 2021. Subsection (2) of the statute defines various terms, including “erotic fondling,” “erotic nudity,” and “masturbation,” and in doing so, the statute specifically refers to the “developing or undeveloped breast area” of a child. § 18-6-403(2)(c), (d), (f). Peiffer says that if the legislature intended to criminalize the touching of an undeveloped breast under the child sexual assault statute, it would have done so explicitly, as it did in the sexual exploitation statute. ¶ 14 We will assume that the term “breast” is ambiguous, because it is susceptible to two reasonable interpretations: it could mean a developed breast, as Peiffer argues, or both a developed and undeveloped breast, as the People argue. Thus, to ascertain the legislature’s intent, we look to the goal of the statutory scheme and 
6 the statute’s prior iterations. See Marriage of Ikeler, 161 P.3d at 668. ¶ 15 The child sexual assault statute is intended to protect all children under the age of fifteen, regardless of their gender. We know that for two reasons. First, the plain language of section 18-
3-405(1) does not distinguish between male and female children. Second, prior to 1988, the definition of “intimate parts” included “the breast of a female person”; in 1988, the General Assembly amended the statutory definition to instead include “the breast of any person.” Ch. 124, sec. 17, § 18-3-401, 1988 Colo. Sess. Laws 712. That amendment makes clear that the legislature intended to extend statutory protections to non-female children. See, e.g., Robles v. People, 811 P.2d 804, 806 (Colo. 1991) (“When a statute is amended, it is presumed that the legislature intended to change the law.”). ¶ 16 It follows that the term “breast” must include the undeveloped breast of any person. As the People point out, an interpretation of “breast” that includes only a developed breast would provide statutory protections only to females and, even more specifically, only to those female children who had developed breasts before the 
7 age of fifteen. In light of the amendment, that interpretation is untenable. The consequence would be that adults could subject all prepubescent girls and all non-female children to touching of the children’s undeveloped breasts for the purpose of sexual arousal, gratification, or abuse. ¶ 17 Nor is it clear how Peiffer’s interpretation would be effectuated. Under his reading of the statute, whether a person has committed sexual assault on a child might depend on whether the child’s breasts are sufficiently developed to meet the statutory definition. And how would a court determine that? We are confident the legislature did not intend for trial judges to evaluate the development of children’s breasts to determine application of the statute. ¶ 18 In sum, we conclude that the term “breast” includes the developed or undeveloped breast of any child. Under that definition, Peiffer indisputably touched K.B.’s “breasts.” B. The Evidence Was Sufficient to Show That Peiffer Touched K.B.’s Breasts for the Purpose of Sexual Arousal or Gratification 
8 1. Standard of Review ¶ 19 We review de novo whether the evidence before the jury was sufficient both in quantity and quality to sustain a conviction. Clark v. People, 232 P.3d 1287, 1291 (Colo. 2010). We must determine “whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.” Id. (quoting People v. Bennett, 183 Colo. 125, 130, 515 P.2d 466, 469 (1973)). ¶ 20 In conducting our review, we must give the People the benefit of every reasonable inference that may fairly be drawn from the evidence. Id. at 1292. We may not serve as a thirteenth juror or determine what specific weight should be accorded to various pieces of evidence. People v. Sprouse, 983 P.2d 771, 778 (Colo. 1999). Accordingly, it is up to the fact finder to resolve all “conflicts, inconsistencies, and disputes in the evidence.” People v. Padilla, 113 P.3d 1260, 1261 (Colo. App. 2005). Therefore, we will not disturb the jury’s findings “unless the evidence is legally insufficient to support a finding of guilt beyond a reasonable doubt.” Id. 
9 2. Discussion ¶ 21 As noted, “sexual contact” requires that the person touch the child’s intimate parts “for the purposes of sexual arousal, gratification, or abuse.” § 18-3-401(4)(a).
2 Peiffer says the prosecution failed to prove that he touched K.B.’s breasts for any one of those purposes. ¶ 22 True, during his police interview, Peiffer repeatedly denied that he touched K.B. for any sexual reason. He told the detective that he was “fooling around” and having “fun” with K.B. ¶ 23 But there was also evidence that Peiffer touched K.B. only when no one else was present, told K.B. to keep the touching a secret, and refused to stop touching her even after K.B. told him to stop. Peiffer also admitted to the detective that the touching was “inappropriate.” All of that evidence undermined Peiffer’s 2 The jury instructions tracked the disjunctive language of the statute and therefore instructed that the touching had to be for the purpose of sexual arousal, gratification, or abuse. As Peiffer noted in his motion for a new trial, the “prosecution proceeded on a theory of sexual arousal or gratification.” To the extent Peiffer contends that the prosecutor had to prove that he committed sexual contact for the additional purpose of sexual abuse, and that no evidence supported such a finding, we reject that contention as contrary to the statute’s plain language. 
10 statements that the touching was just part of ordinary horseplay with his granddaughter. ¶ 24 “An actor’s state of mind is normally not subject to direct proof and must be inferred from his or her actions and the circumstances surrounding the occurrence.” People v. Phillips, 219 P.3d 798, 800 (Colo. App. 2009). Viewing the evidence in the light most favorable to the prosecution, we conclude that the jury could have inferred from Peiffer’s conduct that he touched K.B. for purposes of sexual arousal or gratification. ¶ 25 In reaching the guilty verdict, the jury apparently gave more weight to K.B.’s statements during her forensic interview and her conversation with father than it did to Peiffer’s statements to the detective that he did not touch K.B. for any sexual reason. That, of course, was the jury’s prerogative. See Padilla, 113 P.3d at 1261. On a review of the sufficiency of the evidence, we may not reweigh the evidence or make our own credibility determinations. See People v. Webster, 987 P.2d 836, 842 (Colo. App. 1998). ¶ 26 Because the evidence was sufficient for a reasonable jury to find Peiffer guilty beyond a reasonable doubt, we may not disturb the verdict. 
11 III. Evidentiary Issues ¶ 27 Peiffer contends the trial court erred by admitting two statements. First, he says his comment to the detective in which he compared the nature of his contact with K.B. to the nature of homosexual intimate contact was unfairly prejudicial. Second, he says K.B.’s statement that she told Peiffer to stop touching her was irrelevant because lack of consent is not an element of sexual assault on a child. A. Additional Background ¶ 28 During his interview with the detective, Peiffer made two comments about homosexuality. ¶ 29 The first comment came just after Peiffer told the detective that his touching of K.B. was not “deviant behavior.” He followed that statement with his opinion that homosexual conduct was deviant behavior and that whatever he did with K.B. was “miniscule, a tiny fraction to what a homosexual would do.” ¶ 30 The second comment came about a half hour later, in response to the detective’s question about whether Peiffer thought any of his hugs with K.B. had escalated or been inappropriate. 
12 Peiffer agreed that some hugs might have been inappropriate, but then explained his position further: Even though homosexuality is not against the law . . . if there’s a god looking down and he said, “What’s more deviant behavior?” . . . that just seems . . . and I’m talking not just a little bit more deviant than anything I ever did but in a whole different category. ¶ 31 Defense counsel filed a motion in limine to exclude the statements as unduly prejudicial. The trial court denied the motion, reasoning that the statements were probative because they were “akin to an admission” by Peiffer that his conduct was on a scale of deviant behavior, and the probative value of the statements was not substantially outweighed by the risk of unfair prejudice. ¶ 32 At trial, K.B. testified that she was not sure if she had told Peiffer to stop touching her. In the forensic interview, however, K.B. said that she had told her grandfather “to stop a bunch of times, but he hasn’t.” Later, she repeated that she had told him to stop “every time he’s come over and done it,” but that, each time, Peiffer said he had forgotten her earlier request. 
13 B. Standard of Review ¶ 33 We review a trial court’s evidentiary rulings for an abuse of discretion. People v. Beilke, 232 P.3d 146, 151 (Colo. App. 2009). ¶ 34 Because we perceive no abuse of discretion in the trial court’s evidentiary rulings, we need not address preservation or the proper standard of reversal. C. Discussion ¶ 35 CRE 401 defines relevant evidence as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” Even relevant evidence is inadmissible, however, if its probative value is substantially outweighed by the danger of unfair prejudice. People v. Dist. Ct., 869 P.2d 1281, 1286 (Colo. 1994). Evidence is unfairly prejudicial if it has an “undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror.” People v. Dist. Ct., 785 P.2d 141, 147 (Colo. 1990). ¶ 36 In balancing the probative value against the risk of unfair prejudice, the trial court has considerable discretion. Dist. Ct., 869 
14 P.2d at 1285. On appellate review, we assume that evidence should be given its “maximal probative weight and its minimal prejudicial effect.” Id. 1. Peiffer’s Statements about Homosexuality ¶ 37 The only contested factual issue at trial was whether Peiffer had touched K.B.’s breasts for the purpose of sexual arousal or gratification. His comparison of his own conduct to homosexual conduct was probative on that point. In effect, as the trial court observed, Peiffer’s comments were an admission concerning his state of mind — in Peiffer’s view, his touching of K.B., while somewhat deviant, was not nearly as deviant as homosexual conduct. By placing his conduct on a scale of deviant behavior, the higher end of which was represented by intimate homosexual conduct, Peiffer refuted his own assertion that his touching of K.B. was entirely innocuous. ¶ 38 Nor are we persuaded that the probative value of the comments was substantially outweighed by the danger of unfair prejudice under CRE 403. To be sure, many of the jurors may not have shared Peiffer’s view of homosexuality. But when the prosecutor mentioned Peiffer’s comments, he admonished the jury 
15 to “not for any second think about convicting this defendant based on his [views] on homosexuality” and instead emphasized the specific, proper purpose for which the jury could consider the comments. As well, during voir dire, the trial court told the jury that “sympathy and prejudice have no place in a criminal trial; instead, this case must be decided only on the evidence presented at trial and the law as I instruct you.” In the absence of any evidence to the contrary, we presume the jury heeded the court’s instructive comments. Cf. People v. Villa, 240 P.3d 343, 352 (Colo. App. 2009). 2. K.B.’s Statement That She Told Peiffer to Stop ¶ 39 Peiffer contends that K.B.’s statement that she told him to stop touching her was irrelevant because the prosecution did not have to prove lack of consent. But the statement was relevant to prove the disputed factual issue at trial — whether Peiffer touched K.B.’s breasts for the purpose of sexual arousal or gratification or whether he touched her breasts out of simple affection and playfulness. ¶ 40 During the forensic interview, K.B. told the interviewer that she had asked Peiffer to stop touching her but that he nonetheless 
16 continued, and, in fact, the touching became more frequent. Like Peiffer’s comments about a spectrum of deviant behavior, K.B.’s statements undermined Peiffer’s assertion that his touching of K.B.’s breasts had no sexual purpose. The jury could have inferred that if Peiffer had touched K.B.’s breasts because she thought it was “fun,” as he claimed in his interview, he would have stopped when she asked him to. Because he did not, the jury could have concluded that the touching was not for K.B.’s benefit but for his own. ¶ 41 In any event, Peiffer does not allege any unfair prejudice from the admission of K.B.’s statements and we discern none. See Dist. Ct., 869 P.2d at 1286 (evidence is not unfairly prejudicial simply because it weakens the defendant’s case). Accordingly, we cannot say that the trial court abused its discretion in admitting the statements. IV. Sentencing Claims ¶ 42 The jury found Peiffer guilty of two counts of sexual assault on a child as part of a pattern of sexual abuse. See § 18-3-405(2)(d). The trial court sentenced him to concurrent prison terms of eight years to life. 
17 ¶ 43 Whether Peiffer challenges his sentence and, if so, the basis for such a challenge is not entirely clear. We construe pro se briefs broadly to ensure that pro se litigants are not denied review of important issues because of their inability to articulate their arguments like a lawyer. See Jones v. Williams, 2019 CO 61, ¶ 5. Still, we may not rewrite a pro se litigant’s pleadings or act as an advocate by considering issues not raised in the briefs. See People v. Cali, 2020 CO 20, ¶ 34. ¶ 44 Peiffer appears to argue that he was not subject to the “pattern of abuse” sentence enhancer because he was “not accused of any ‘sex act.’” If that is his argument, we reject it. ¶ 45 “Pattern of sexual abuse” means “the commission of two or more incidents of sexual contact involving a child when such offenses are committed by an actor upon the same victim.” § 18-3-
401(2.5). The verdict forms included a definition of “pattern of sexual abuse,” and Jury Instruction 17 defined sexual contact. Commission of a “sex act” is not an element of sexual assault on a child as part of a pattern of abuse. 
18 ¶ 46 Peiffer also appears to argue that because he “was not accused of any violent act of any sort,” he could not be convicted of a “crime of violence.” Again, assuming that is his argument, we disagree. ¶ 47 When a defendant is convicted of a class 3 felony of sexual assault on a child as part of a pattern of sexual abuse, the trial court must sentence him “in accordance with the provisions of section 18-1.3-406[, C.R.S. 2021].” § 18-3-405(3). Section 18-1.3-
406 is the crime of violence sentencing statute. Thus, although sexual assault on a child as part of a pattern of abuse does not satisfy the definitional or elemental test for a crime of violence, it is treated as a crime of violence for sentencing purposes. See Hunsaker, ¶ 14 (explaining that sexual assault on a child as part of a pattern of sexual abuse is a “per se” crime of violence); see also People v. Baca, 2015 COA 153, ¶¶ 39-40 (explaining the difference between a definitional or elemental crime of violence and a “per se” crime of violence), overruled on other grounds by Gonzales v. People, 2020 CO 71. Thus, Peiffer was convicted of a “per se” crime of violence and subject to the crime of violence sentencing statute. V. Conclusion ¶ 48 The judgment and sentence are affirmed. 
19 JUDGE RICHMAN and JUDGE GOMEZ concur.