**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Jorge ANTONIO–ANTIMO, Respondent.**

**No. 99SC384.**

Supreme Court of Colorado,
En Banc.

Sept. 18, 2000.

Rehearing Denied Oct. 10, 2000.

**300**

Ken Salazar, Attorney General, Peter J. Cannici, Assistant Attorney General, Appellate Division, Denver, Colorado, Attorneys for Petitioner.

David S. Kaplan, Colorado State Public Defender, Keyonyu X O'Connell, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

This court granted certiorari to address whether a plea must be vacated when a plea agreement results in an illegal sentence being imposed on a defendant.[1] We hold that when a legal plea bargain is enforced by means of an illegal sentence, the proper remedy, if possible, is to modify the illegal sentence but permit the valid and enforceable plea agreement to stand.

## I. Facts and Procedural History

Respondent, Jorge Antonio–Antimo, was charged with unlawful sale of a schedule II controlled substance and possession of a schedule II controlled substance. *See* § 18–18–405(2)(a)(I), 6 C.R.S. (1999). On July 28, 1995, Respondent appeared before the district court, represented by a court-appointed attorney. On July 28, Respondent, a Mexican national, entered into a written plea agreement with the district attorney in which he promised to plead guilty to "sale of a controlled [substance]," in exchange for dismissal of the possession charge. In addition, the parties stipulated to a sentence concession of: "No jail[,] deportation."

When Respondent's case was called before the district court, his attorney indicated that Respondent had entered into a plea agree-

ment with the district attorney in which he would plead guilty to sale of a controlled substance in exchange for a dismissal of the possession charge. Respondent's attorney then stated, "The sentence concession is no jail time and being held for deportation." (R. at 28.)

The district court then proceeded to question Respondent in order to ensure that Respondent understood. When explaining the possible consequences of his plea, the court stated, "In addition [to jail time], you can be deported. You can be barred from ever returning to this country and prohibited from getting United States citizenship. Do you understand that as well?" (R. at 30.) Respondent answered that he understood.

The sentencing court accepted the guilty plea and entered the following order:

> It's the judgment and sentence of the Court that the defendant be granted probation for a period of 5 years. A condition of probation is that the defendant cooperate with deportation authorities. That he leave this country and not return unless he does so legally with proper authorization and documentation. That he pay the fees did [sic] costs required by statute and do 50 hours of useful community service, which I now waive.

(R. at 31–32.) The Order for Release, signed by the trial judge, stated that Respondent be "release[d] to INS for [a] deportation hearing on or before August 10, 1995." (R. at 22.) The written judgment of conviction and sentence indicated that Respondent was sentenced to probation "for a term of: 5 years, defendant to cooperate with INS." (R. at 22.) The sentencing court ordered Respondent released to the Immigration and Naturalization Service ("INS") for a deportation hearing and Respondent was subsequently ordered deported by the immigration court.

Respondent reentered the United States illegally and was charged with federal felony re-entry offenses.

1. The issue upon which we granted certiorari stated as follows:

Whether the appropriate remedy for a guilty plea that includes an illegal sentence that is not integral to the plea, is to delete the illegal portion of the sentence, but retain the guilty plea.

Respondent filed a Crim. P. 35(c) motion, asserting that the sentence imposed by the sentencing court was illegal because the court lacked the authority to order deportation. The district court agreed and struck the portion of the sentence ordering the defendant to "leave this country." However, the court did not vacate the plea, and allowed the language that "defendant cooperate with deportation authorities" to remain in the agreement.

Subsequently, the state moved to revoke Respondent's probation on the grounds that he was deported and he "reentered the country" in violation of his probation conditions. The state requested that a prison sentence be imposed, and the district court agreed, but delayed imposition of a sentence until after Respondent was sentenced in federal court. The federal court sentenced Respondent to thirty-nine months in federal prison. The district court then sentenced Respondent to a two-year prison sentence.

Respondent appealed the state court's initial sentence to the court of appeals. The court of appeals reversed the district court's denial of Respondent's Crim. P. 35(c) motion for post-conviction relief. Relying on this court's decision in *Chae v. People*, 780 P.2d 481 (Colo.1989), the court of appeals held that the language "leave this country" was an illegal sentence that formed an integral part of the guilty plea.

We granted certiorari to address the question of the proper remedy when a plea bargain is enforced by means of an illegal sentence. We hold that when a plea agreement itself is lawful, the proper remedy, if possible, is to modify the illegal sentence but permit the valid and enforceable plea agreement to stand.

## II. Effect of Illegal Sentences on Plea Agreements

■ A plea of guilty must be voluntarily, knowingly, and intelligently made in order to be valid and constitutional. *See Henderson v. Morgan*, 426 U.S. 637, 644–45, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Lacy v. People*, 775 P.2d 1, 4–6 (Colo.1989). A guilty plea that is induced by misrepresentation, fraud, or coercion is not voluntary. *See Bra-*

*dy v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *People v. Kyler*, 991 P.2d 810, 816 (Colo.1999). When a defendant enters into a plea that is not voluntary or knowing, he may withdraw his plea and plead anew.

The voluntary nature of a plea agreement may come into question when an agreement includes provisions for an illegal sentence. Several courts, including this one, have addressed this situation and held that under certain circumstances, a plea of guilty cannot stand where subsequently it is determined the sentence recommended and imposed is illegal. *See Chae v. People*, 780 P.2d 481, 486 (Colo.1989); *see also Forbert v. State*, 437 So.2d 1079, 1081 (Fla.1983) ("It is a well-established principle of law that a defendant should be allowed to withdraw a plea of guilty where the plea was based upon a misunderstanding or misapprehension of facts considered by the defendant in making the plea."); *Rojas v. State*, 52 Md.App. 440, 450 A.2d 490, 492 (1982); *People v. Benard*, 164 Misc.2d 323, 624 N.Y.S.2d 744, 748 (N.Y.Sup.1995); *State v. Turgeon*, 161 Vt. 561, 641 A.2d 88, 89 (1993).

In *Chae*, the defendant entered into a plea agreement that provided that any prison sentence would be suspended as long as he complied with three conditions. *See* 780 P.2d at 482. The trial court accepted the plea agreement, sentenced the defendant to an eight-year term of incarceration, and suspended the sentence subject to the defendant satisfying certain conditions. *See id.* at 483. The defendant subsequently failed to satisfy the agreed-upon conditions and he was arrested on a bench warrant. *See id.* The court of appeals held that the sentence imposed by the trial court was illegal because the criminal sentencing provisions did not authorize a trial court to suspend execution of a sentence of imprisonment. However, the court of appeals held that the defendant received the sentence for which he had bargained, and was thus subject to its terms. *See id.* at 484. We affirmed the court's holding that the sentence was illegal, but reversed on the issue of the proper remedy. We held:

[W]hen a defendant enters into a plea agreement that includes as a material element a recommendation for an illegal sentence and the illegal sentence is in fact imposed on the defendant, the guilty plea is invalid and must be vacated because the basis on which the defendant entered the plea included the impermissible inducement of an illegal sentence.

*Id.* at 486. We rejected the "benefit of the bargain" theory, stating that no sound public policy supported permitting parties to bargain for an illegal sentence. *See id.* at 487.

Four years later, in *Montoya v. People*, 864 P.2d 1093 (Colo.1994), we addressed a similar situation in which a defendant was sentenced to an illegal sentence after accepting a plea agreement. However, *Montoya* differed from *Chae* in one significant respect: although the sentence imposed was illegal, the plea bargain itself was legal and enforceable. As such, we reached a different conclusion, upholding the plea agreement despite the illegal sentence. *See Montoya*, 864 P.2d at 1095.

In *Montoya*, the defendant accepted an agreement in which he would plead guilty to two charged counts, and in exchange, the state would dismiss all remaining counts and would stipulate to a four-year concurrent probationary sentence. *See id.* at 1094. The district court accepted the plea agreement, sentenced the defendant to two years on each count to run consecutively, suspended the sentence, and placed the defendant on a four-year probation period. *See id.* In subsequent proceedings, the district court held that the initial sentence was illegal[2] but found that the defendant received precisely what he had bargained for and refused to allow the defendant to withdraw his plea. *Id.* at 1095. The court of appeals affirmed. *See id.* We affirmed the court of appeals, stating, "Although the district court's suspension of Montoya's prison sentence and imposition of probation was invalid, the plea agreement supports the sentence of probation.... Montoya got exactly what he bargained for—four years of probation." *Id.* Because the plea bargain itself was legal, issues of constitutionality and public policy present in *Chae* were not present in *Montoya*. The illegal sentence in *Montoya* could be reconciled with the legal plea bargain and the defendant was thus given the benefit of his bargain. Other states have adopted this or similar approaches. *See, e.g., State v. Gourdin*, 156 Ariz. 337, 751 P.2d 997, 999 (Ariz.Ct.App.1988) (allowing a modification of a sentence to give the defendant what he bargained for without any prejudice to him); *State v. Wilson*, 206 N.J.Super. 182, 502 A.2d 46, 47 (1985) (holding that where illegal plea agreement could be remedied in the defendant's favor and the balance of the agreement was well understood by defendant, no sound reason existed to permit defendant to withdraw his guilty plea); *Commonwealth v. Zakrzewski*, 460 Pa. 528, 333 A.2d 898, 900 (1975) ("[W]here a plea bargain has been entered into and is violated by the Commonwealth, the defendant is entitled, at the least, to the benefit of the bargain." ).

Accordingly, in order to determine the appropriate remedy in the case before us, we must analyze both the plea agreement and sentence for legality.

### III. Application

■ Historically, enforcement of the U.S. immigration laws has been delegated to the federal executive branch. *See* Act of Aug. 3, 1882, 22 Stat. 214 (1882). Presently, the U.S. Attorney General is charged with the administration and enforcement of the immigration laws, including the power to order the deportation or removal[3] of illegal aliens from the United States. *See* 8 U.S.C. § 1105 (1999). This authority is exclusive to the executive branch of the federal government; neither

---

2. The criminal code did not permit a court to impose a sentence of imprisonment, suspend that sentence, and then sentence a defendant to probation. *See* § 16-11-101, 8A C.R.S. (1986 & 1993 Supp.).

3. In 1996, Congress amended the Immigration and Nationality Act to replace the terms "deportation" and "exclusion" with the term "removal" in federal immigration law. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 110 Stat. 3009-546 (enacted Sept. 30, 1996).

federal[4] nor state courts have authority or jurisdiction over immigration matters, including the authority to order a person deported. *See United States v. Phommachanh,* 91 F.3d 1383, 1385 (10th Cir.1996) (holding that a federal district court has no authority to deport a defendant-alien as a condition of supervised release); *State v. Patel,* 160 Ariz. 86, 770 P.2d 390, 393 (Ariz.Ct.App.1989)("The federal government has exclusive authority over deportation matters."). Accordingly, in this case, any effort by the district court to order Respondent deported would be invalid. We now must consider the effect of the plea bargain between Respondent and the district attorney, and the resulting sentence.

### A. The Plea Agreement

■ Plea agreements are contractual in nature and thus are interpreted according to customary rules of contract law. *See People v. Johnson,* 999 P.2d 825, 829 (Colo.2000); *see also United States v. Bunner,* 134 F.3d 1000, 1003 (10th Cir.1998). However, because issues of constitutional dimension are involved, a higher level of scrutiny is applied. *See Johnson,* 999 P.2d at 829. In interpreting a plea agreement, the court focuses on the meaning a reasonable person would have attached to the agreement at the time the agreement was entered into. *See id.* Although a court will give credence to the plain language of the plea agreement, it will not construe the language so literally that the purpose of the plea agreement is frustrated. *See Bunner,* 134 F.3d at 1003; *see also Johnson,* 999 P.2d at 829 ("In effectuating the intentions of the parties, we recognize that terms of a plea agreement may be implied as well as expressed plainly on the agreement's face.").

■ A determination of the parties' obligations under a plea agreement is a question of law, and we review it de novo. *See Craig v. People,* 986 P.2d 951, 960 (Colo.1999). On the written plea agreement between Respondent and the district attorney, in response to the type-written statement, "The parties have stipulated to the following sentence concessions," the parties wrote by hand, "No jail[,] deportation." (R. at 20)

■ Respondent argues that this written plea agreement means that he would serve no jail time and, in exchange, he would be deported by order of the state court. In support of this, he directs our attention to the language used by the trial court at sentencing requiring, as a condition of his plea, "That he leave this country. . . ." (R. at 32.) Clearly, were this the essence and meaning of his bargain, i.e., that he would be deported by the state rather than INS, it would constitute an impermissible and illegal inducement. However, we reject this interpretation, and conclude instead that the parties intended for "deportation" to mean that Respondent would cooperate with INS and undergo deportation proceedings.

■ Initially, we note the terse nature of the written plea agreement between Respondent and the district attorney, and hold that the meaning of "deportation" within the agreement is ambiguous. Accordingly, we look to the circumstances surrounding the execution of the plea agreement to determine its legality. *See Lorenzen v. Mustard's Last Stand, Inc.,* 196 Colo. 265, 267, 586 P.2d 12, 14 (1978)("[I]n construing a contract, one must consider, '. . . the subject-matter, the object of making it, the sense in which the parties naturally understood it at the time it was made, and the purposes and objects to be accomplished thereby.' " (quoting *Dickson v. Dick,* 59 Colo. 583, 588, 151 P. 441, 443 (1915))).

Significantly, at the Respondent's second advisement, which occurred a week before his plea and sentence, the trial court verified the fact that there was an immigration hold placed on Respondent. When Respondent's attorney explained to the court the nature of the plea agreement between Respondent and the district attorney, he stated, "The sentence concession is no jail time and being *held* for deportation." (R. at 28.) (Emphasis added.)

---

4. The federal judiciary may enter judicial orders of removal in extremely limited circumstances, and only if requested by the U.S. Attorney with the concurrence of the Immigration and Natural-ization Service Commissioner. *See* INA § 238(d), 8 U.S.C. § 1228(d) (1999). *See generally United States v. Romeo,* 122 F.3d 941 (11th Cir.1997).

Later, the trial court, in explaining the consequences of the plea to Respondent, stated that by entering the plea, Respondent could be deported and barred from obtaining United States citizenship in the future. When the trial judge pronounced the sentence, he told Respondent that he must cooperate with deportation authorities as a condition of probation. The Order for Release, signed by the trial court, stated that Respondent was to be released to INS for a deportation hearing. The written judgment of conviction and sentence reflected that Respondent was to cooperate with INS as a condition of probation.

Although the trial court did state that Respondent must "leave the country," the facts surrounding this statement and the circumstances of the plea agreement and sentence compel the conclusion urged by the People that the parties intended the word "deportation" in their written plea agreement to mean that Respondent agreed to cooperate with immigration officials, who would institute deportation procedures. Further, these facts establish that at no time did Respondent believe that the trial court was going to deport him or that Respondent must waive any defenses that he might have to INS deportation proceedings. As such, we find that the plea agreement between Respondent and the district attorney was a valid and enforceable agreement consistent with the holding of *Chae.*

### B. The Sentence

█ As we noted earlier, state courts have no authority to order a person deported. *See Phommachanh,* 91 F.3d at 1385; *State v. Patel,* 770 P.2d at 393. Consequently, we must consider the sentence handed down by the trial court and whether it illegally ordered Respondent deported from the United States.

The sentence issued by the trial court consists of an orally rendered decision and a written Judgment of Conviction. In the oral order, the trial court stated:

It's the judgment and sentence of the Court that the defendant be granted probation for a period of 5 years. A condition of probation is that the defendant *cooper-*

*ate with deportation authorities.* That he *leave this country* and not return unless he does so legally with proper authorization and documentation.

(R. at 31–32.) (Emphasis added.) The written Judgment of Conviction and Sentence indicates that Respondent was sentenced to "[p]robation for a term of: 5 years, defendant to cooperate with INS." (R. at 22.)

Clearly, the language that Respondent "cooperate with deportation authorities" is legal and enforceable. Similarly, the written judgment, ordering Respondent to "cooperate with INS" is legal and enforceable. However, the language that Respondent "leave this country" is, in effect, an invalid order of deportation. *See Phommachanh,* 91 F.3d at 1385; *State v. Patel,* 770 P.2d at 393. Thus, we must consider the proper remedy for a sentence including an invalid order of deportation.

Pursuant to Crim. P. 35(c)(2), a defendant may file a motion for post-conviction review alleging in good faith that the sentence was imposed in violation of the United States Constitution, or that the sentence was not in accordance with the sentence authorized by law. In this case, Respondent filed a Crim. P. 35(c) motion and the trial court granted the motion, stating:

The federal cases from the 10th Circuit do, I think, make it clear that this Court does not have authority to deport an individual. That has to be done by the federal authorities. And to that extent, the sentence was illegal when he says to leave this country. That was the only part of the sentence I find that was illegal.... The question is, what is the remedy?

. . . .

[I]n this case, the sentence was proper except for the one part, leave this country, so it won't be necessary to vacate the plea, just correct the one part of the sentence that was not legal, namely leave this country.

(R., vol. II, at 18–19.) The 35(c) court properly found that the trial court exceeded its authority when it ordered Respondent to

leave the United States.[5] *See Phomma-chanh*, 91 F.3d at 1385; *State v. Patel*, 770 P.2d at 393. The court's chosen remedy was to strike the illegal language from the sentence and enforce the remaining, legal sentence. The 35(c) court's ruling corresponds with this court's ruling in *Montoya*, where we upheld a trial court's ruling finding an illegal sentence and resentencing the defendant to a legal sentence that preserved the initial bargain between the defendant and the prosecutor. Like *Montoya*, the case at hand involves a valid plea agreement but an illegal sentence. Accordingly, we hold that the 35(c) court properly corrected the illegality but preserved the provisions of the plea agreement.

Although not binding upon us, the Tenth Circuit has taken a similar approach in a comparable situation. In *Phommachanh*, the defendant pled guilty to deportable offenses and acknowledged in his plea agreement that he understood his plea could result in deportation. The U.S. District Court, rather than transferring the defendant to INS, ordered that the defendant "be deported and remain outside the United States...." *Phommachanh*, 91 F.3d at 1384. The Tenth Circuit reversed, holding that a "district court lack[s] authority to order, as a condition of supervised release, that [the defendant] be deported." *Id.* However, the court allowed the plea to stand but amended the illegal sentence to state that as a condition of supervised release "the defendant is to be surrendered to a duly authorized immigration official for deportation." *Id.* at 1388.

Like the agreement in *Phommachanh*, in this case, Respondent's plea agreement was a valid and enforceable plea. However, the district court, in a portion of its oral sentence, included an illegal provision. The district court correctly found the plea to be enforceable and modified the sentence to effectuate the intent of the parties to the plea agreement.

---

5. We note that the court also could have corrected the illegal sentence pursuant to Crim. P. 35(a), which states that a court may correct an illegal sentence at any time. *See Downing v. People*, 895 P.2d 1046, 1050 (Colo.1995); *People v. Bradley*, 169 Colo. 262, 264–265, 455 P.2d 199,

## IV.   Conclusion

 Accordingly, we hold that when an illegal sentence is imposed to enforce a valid and legal plea agreement, the proper remedy, if possible, is to modify the sentence to effect the intent of the plea agreement. We reverse the judgment of the court of appeals and remand for action consistent with this opinion.

Justice COATS does not participate.

200 (1969); *see also Smith v. Johns*, 187 Colo. 388, 390, 532 P.2d 49, 50 (1975)(holding that "[w]here a trial court has jurisdiction of a person of the defendant and of the subject matter, and has imposed a sentence in error, the court retains jurisdiction to correct the sentence").