The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

2016 CO 33
Supreme Court Case No. 13SC216
Certiorari to the Colorado Court of Appeals
Court of Appeals Case No. 11CA241
Petitioner:
The People of the State of Colorado,
v.
Respondent:
David Will Corson.
Judgment Reversed
en banc
May 16, 2016

Attorneys for Petitioner:
Cynthia H. Coffman, Attorney General
Christine Brady, Assistant Attorney General
Denver, Colorado
Attorneys for Respondent:

Law Office of Ingrid J. Defranco Ingrid J. Defranco

Brighton, Colorado

JUSTICE HOOD delivered the Opinion of the Court.
JUSTICE MÁRQUEZ and JUSTICE GABRIEL do not participate.
 
¶1      In 2001, when he was twenty-eight, the respondent David Corson had a sexual relationship with the victim, K.B., a seventeen-year-old client of the residential treatment facility where Corson worked. In 2003, Corson pled guilty to a charge of sexual assault on a child, position of trust, and the prosecution agreed to recommend a probationary sentence and dismiss a separate charge. Approximately three years before Corson’s guilty plea, the prosecutor in his case had obtained a juvenile adjudication against K.B. for falsely reporting a sexual assault. That case had no connection to Corson except that it would have provided him a way to impeach K.B.’s credibility had he gone to trial. The prosecutor did not disclose K.B.’s false-reporting adjudication to Corson. As a result, Corson sought to overturn his conviction through a Crim. P. 35(c) proceeding. The post-conviction court denied relief, and the court of appeals reversed. We granted the Attorney General’s request to review the court of appeals’ decision.
¶2      Corson argues that the People’s non-disclosure rendered his plea involuntary and his plea counsel ineffective. For several reasons, we disagree. Concerning voluntariness, Corson did not suffer a due process violation because the People were under no constitutional duty to disclose the impeachment evidence here. Concerning ineffectiveness, Corson has not demonstrated prejudice: there is no reasonable probability that he would have chosen to proceed to trial had the false-reporting adjudication been disclosed because, first, the post-conviction court found, with record support, that Corson knew of K.B.’s adjudication before he pled guilty; second, there was evidence against Corson apart from K.B.’s testimony; and third, the plea bargain provided him with significant sentencing concessions, including avoiding a potential sentence of life in prison. Thus, unlike the court of appeals, we conclude Corson’s constitutional claims fail.
¶3      Aside from grappling with the constitutionality of Corson’s guilty plea, we also address whether juvenile adjudications are subject to discovery under our rules of criminal procedure. We hold that juvenile adjudications are not part of a witness’s criminal history and are therefore not subject to automatic disclosure under Crim. P. 16(I)(a)(1)(V).
¶4      Accordingly, we reverse the judgment of the court of appeals.
I. Facts and Procedural History
A. Pre-Guilty-Plea Proceedings
¶5      In 2001, when Corson was twenty-eight, he worked at a residential treatment facility in Fort Collins called Turning Point. The People alleged that between April and September he had an illegal sexual relationship with seventeen-year-old K.B., a Turning Point resident. K.B. was released from Turning Point after she turned eighteen in the fall of 2001.
¶6      In 2002, the People filed a two-count information. In Count I, the prosecution charged Corson with committing sexual assault on a child by one in a position of trust, a class-four felony. See § 18-3-405.3(1), C.R.S. (2001). In Count II, the prosecution alleged the same crime as part of a pattern of sexual abuse, a class-three felony. See § 18-3-405.3(1), (2)(b), C.R.S. (2001).
¶7      In preparation for trial, Corson’s lawyer filed a number of discovery motions. One requested impeachment information for all potential prosecution witnesses, including “[a]ny and all records, police reports and information regarding criminal convictions, guilty verdicts, juvenile adjudications, or pending criminal or juvenile cases.” Corson’s lawyer filed a separate motion concerning K.B. that specifically requested records of juvenile adjudications.
¶8      The prosecutor, who had previously obtained a juvenile adjudication against K.B. for falsely reporting a sexual assault, filed responses opposing Corson’s discovery motions. One response stated that some of Corson’s requested information was automatically subject to disclosure, and another response read, “The People have provided all information pertaining to the victim, which is in the possession of the Office of the District Attorney.” She did not disclose K.B.’s adjudication. Before Corson’s plea, she left the district attorney’s office for reasons unrelated to this case. A new prosecutor stepped in, but the second prosecutor (if he ever knew about it at all) did not disclose K.B.’s false-reporting adjudication either.
¶9      The trial court never ruled on Corson’s motions.
¶10      In 2003, just before trial, Corson pled guilty to Count I. In exchange, the People moved to dismiss Count II, the pattern count. The parties stipulated to a sentence of Sex Offender Intensive Supervision Probation (SOISP) for ten years to life. The court accepted Corson’s plea as to Count I, dismissed Count II, and imposed the SOISP sentence. Corson did not appeal.
B. Post-Conviction Proceedings
¶11      Assisted by new counsel, Corson filed a petition for post-conviction relief in 2006. See § 18-1-410(1)(a), (e), C.R.S. (2015); Crim. P. 35(c). The impetus for the new proceedings came from a June 2006 recorded interview that K.B. gave to a defense investigator in which she recanted her allegations and claimed that her probation officer had coerced her into accusing Corson. She claimed that she had a sexual relationship with Corson but that it began the day after she left Turning Point—and therefore after she turned eighteen (the relevant age of consent). After K.B. granted the defense team access to her Turning Point records, Corson’s post-conviction counsel uncovered K.B.’s false-reporting adjudication and the link to the first prosecutor in Corson’s case. Corson supplemented his post-conviction petition based on this information.
¶12      Corson made two claims before the post-conviction court that are relevant here. First, Corson alleged a due-process violation that the People had wrongly withheld K.B.’s adjudication, rendering his guilty plea involuntary. Second, he asserted that the prosecution’s non-disclosure rendered his plea counsel ineffective.
¶13      The People acknowledged to the post-conviction court that the prosecution had “inadvertently failed to discover K.B.’s false-reporting adjudication to the defendant” having earlier conceded that it was “information that we should have turned over, and we agree to that.” Nevertheless, the People insisted that Corson already knew about K.B.’s adjudication when he pled guilty and therefore the non-disclosure did not affect his decision.
¶14
 The post-conviction court held a four-day evidentiary hearing in November 2007. During the hearing, the court made an oral ruling that “as a matter of law juvenile adjudications are not subject to discovery,” explaining that “juvenile adjudications are not criminal convictions under Colorado law[,] [a]nd as such, are not part of the normal discovery under Rule 16 of the Rules of Criminal Procedure.” However, the court allowed testimony and argument regarding K.B.’s false-reporting adjudication.
¶15       Corson testified that he only learned of K.B.’s false-reporting adjudication when his post-conviction lawyers brought it to his attention in 2006. Had he known, Corson said he would “[d]efinitely not” have accepted the plea deal, adding, “I believe I would have gone forward to trial.” Corson acknowledged on cross examination that, as a Turning Point counselor, he had access to client files and he attended occasional team meetings where he received information about why clients were at Turning Point.
¶16       Corson’s plea counsel testified that Corson never told him about K.B.’s adjudication and that the prosecution never disclosed it. Plea counsel also filed an affidavit relating that, in response to his “repeated requests” for impeachment material, he “was told by the District Attorney’s Office that there was no related discoverable information.” Had the adjudication been disclosed, plea counsel said he would have advised Corson not to accept the plea agreement; he would have recommended trial to argue that the sexual relationship began once K.B. was legally an adult.
¶17       Corson also put on a criminal defense expert who assessed plea counsel’s performance as “appropriate” given what plea counsel knew at the time. But the expert testified that the withheld information was “very significant” and “critical” impeachment material. The expert thought the undisclosed evidence ultimately rendered plea counsel “unable to provide effective assistance of counsel.”
¶18       In support of their contention that Corson had knowledge of K.B.’s adjudication all along, the People called Corson’s former supervisor who testified regarding Corson’s attendance at weekly staff meetings where K.B.’s juvenile history, including her false-reporting adjudication, was discussed. She also testified that Corson had access to client files and that she and Corson had discussed K.B.’s false-reporting adjudication before he pled guilty.
¶19       In 2010, the post-conviction court entered a written order denying Corson relief.1 The court found that Corson had been in contact with K.B. and had helped orchestrate her recantation (the same recantation she later disavowed at the post-conviction hearing). The court rejected Corson’s ineffectiveness claim and found that Corson knew about K.B.’s adjudication before he pled guilty. Consequently, the court concluded plea counsel could not have performed deficiently by failing to inform Corson of something he already knew. The court found that plea counsel accurately advised Corson that going to trial carried the risk of a long prison sentence, and it concluded Corson failed to prove prejudice because there was no reasonable probability that plea counsel’s “re-emphasizing” K.B.’s history would have convinced Corson to go to trial. The court did not address Corson’s claim that his plea was involuntary.
¶20       Corson appealed, and the court of appeals reversed and remanded. People v.  Corson, 2013 COA 4, __ P.3d __. The division determined it could resolve neither Corson’s ineffective-assistance claim nor his voluntariness claim because each one was premised on the prosecution’s discovery failures and the post-conviction court had erred in deciding that juvenile adjudications are not discoverable. See id. at ¶ 13. The court of appeals then ruled that juvenile adjudications are automatically discoverable under Crim. P. 16: “A juvenile adjudication is part of a witness’s criminal history subject to disclosure because such evidence may tend to negate the guilt of the accused.Id. at ¶ 19 (citing Brady v. Maryland, 373 U.S. 83, 87–88 (1963); Crim. P. 16(I)(a)). The court of appeals distinguished United States v. Ruiz, 536 U.S. 622, 633 (2002), which held the Constitution does not require the government to disclose impeachment information before entering into a plea agreement, and concluded that on the facts of this case Ruiz did not relieve the prosecution of its duty to disclose evidence of K.B.’s false-reporting adjudication. See Corson, ¶¶ 28–30.
¶21       The court of appeals also concluded the post-conviction court used the wrong legal framework in evaluating Corson’s ineffectiveness claim. Id. at ¶ 42. The post-conviction court had analyzed the claim as though the actions of plea counsel were at issue, but the deficient performance, as alleged by Corson, actually came from the government’s interference with plea counsel’s ability “to make independent decisions about how to conduct the defense.” Id. (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)). The court of appeals remanded for application of the alternative framework. Id. at ¶¶ 42–43. Similarly, it remanded Corson’s voluntariness claim for further factual development. Id. at ¶ 34.
¶22       We granted the People’s petition for certiorari. 2
II. Analysis
¶23       We begin with Corson’s attack on his plea. We reject his claims for relief because the People’s non-disclosure did not violate Corson’s due process rights, and he has not shown the requisite prejudice to establish ineffective assistance of counsel. We then turn to Crim. P. 16 and hold that the rule does not require the automatic disclosure of all juvenile adjudications as part of a witness’s criminal history.
A. Attack on the Plea
¶24       Corson lodges two challenges against his guilty plea—one alleges his plea was involuntary, the other alleges his plea counsel was ineffective. We discuss the applicable law and conclude Corson is not entitled to relief under either theory.
1. Standard of Review
¶25       “In a Crim. P. 35(c) proceeding, there is a presumption of validity attaching to a judgment of conviction and the burden is upon the defendant, as the moving party, to establish his claim by a preponderance of the evidence.” People v. Naranjo, 840 P.2d 319, 325 (Colo. 1992). Ineffective-assistance-of-counsel claims present mixed questions of law and fact. Dunlap v. People, 173 P.3d 1054, 1063 (Colo. 2007) (citing Strickland, 466 U.S. at 698). The same is true of claims asserting that a guilty plea was involuntary. Sanchez-Martinez v. People, 250 P.3d 1248, 1254 (Colo. 2011). “We consider the totality of the circumstances to determine whether the guilty plea was entered knowingly, voluntarily, and intelligently.” Id. at 1257. For both types of claims, we review the lower court’s legal conclusions de novo but defer to the post-conviction court’s factual findings if they are supported by the record. Dunlap, 173 P.3d at 1063 (ineffectiveness claim); Sanchez-Martinez, 250 P.3d at 1254 (voluntariness claim).

2. Voluntariness of the Plea
¶26       By pleading guilty, a defendant gives his “consent that judgment of conviction may be entered without a trial,” Brady v. United States, 397 U.S. 742, 748 (1970), and he affirmatively waives numerous constitutional rights, see Boykin v. Alabama, 395 U.S. 238, 243 (1969) (discussing rights waived). These extensive waivers restrict a defendant’s opportunities to challenge a conviction, even though a conviction by plea is not completely unassailable. “[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.” United States v. Broce, 488 U.S. 563, 569 (1989); see also Patton v. People, 35 P.3d 124, 128 (Colo. 2001).
¶27       “A guilty plea must represent ‘a voluntary and intelligent choice among the alternative courses of action open to the defendant,’ and must be the product of ‘a free and rational choice.’” People v. Kyler, 991 P.2d 810, 816 (Colo. 1999) (quoting North Carolina v. Alford, 400 U.S. 25, 31 (1970)); see also People v. Antonio-Antimo, 29 P.3d 298, 301 (Colo. 2001). In Brady, the Court articulated the standard for voluntariness:

A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor’s business (e.g. bribes).

397 U.S. at 755 (internal quotation marks omitted).
¶28       A guilty plea can be voluntary even if the defendant lacks access to impeachment evidence. Ruiz, 536 U.S. at 633. In Ruiz, a defendant pled guilty after turning down a “fast-track” plea bargain whereby the government promised to recommend a sentencing downgrade if the defendant pled guilty and waived indictment, trial, appeal, and access to impeachment material. Id. at 625–26. The Ninth Circuit determined the Constitution requires pre-guilty-plea disclosure of impeachment information, effectively holding that no guilty plea could be voluntary without the disclosure of such evidence. Id. at 626, 629. The Supreme Court reversed. Id. at 633. The Court stressed the “random way” in which impeachment information can help some defendants, id. at 630, and explained that “impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary,” id. at 629. Ruiz thus determined that prosecutors need not turn over impeachment evidence before entering into a plea bargain. Id. at 633.
¶29       The court of appeals determined that Ruiz did not apply to “the unique circumstances of this case” because the prosecution did not just decline to turn over information but affirmatively represented there was nothing to disclose. Corson, ¶ 29. The division below also distinguished Ruiz as a case involving fast-track pleas while noting that Corson pled guilty days before his scheduled trial date. Id. at ¶ 30.
¶30       We do not find Ruiz so easily distinguished. First, the post-conviction court never made a finding that there was an affirmative misrepresentation in this case. Second, we do not read Ruiz as restricted to fast-track pleas. On the contrary, the Supreme Court broadly pronounced that “the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.” Ruiz, 536 U.S. at 633.
¶31       We therefore reject Corson’s argument that the non-disclosure of K.B.’s adjudication amounted to a due process violation or made his plea involuntary. Ruiz made clear that there is no due process right to non-exculpatory impeachment material, id., and it reiterated that the Constitution does not require a defendant to have “complete knowledge of the relevant circumstances” to enter a voluntary guilty plea, id. at 630; see also Brady, 397 U.S. at 757 (“A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State’s case . . . .”). And while courts are divided over whether Ruiz applies to exculpatory evidence in plea negotiations, see Buffey v.  Ballard, 782 S.E.2d 204, 212–18 (W. Va. 2015) (collecting cases on both sides and holding exculpatory evidence must be disclosed), we need not, and therefore do not, weigh in on that debate here because K.B.’s false-reporting adjudication is non-exculpatory impeachment material, as our discussion of prejudice, or the lack of it, reveals. Before addressing prejudice, however, we tee up Corson’s overlapping claim that non-disclosure of the false-reporting adjudication rendered plea counsel ineffective.
3. Effective Assistance of Plea Counsel
¶32       Criminal defendants have a right to counsel, see U.S. Const. amends. VI, XIV; see also Colo. Const. art. II, § 16, and “the right to counsel is the right to the effective assistance of counsel,” McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). This right extends to plea bargaining. See Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012).
¶33 The Supreme Court in Strickland described two types of ineffectiveness. The Court first explained that the government violates a defendant’s right to effective assistance of counsel “when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense.” 466 U.S. at 686. Strickland went on to recognize that defense counsel “can also deprive a defendant of the right to effective assistance, simply by failing to render ‘adequate legal assistance.’” Id. (quoting Cuyler v. Sullivan, 466 U.S. 335, 344 (1980)). It was this latter set of cases, cases of “actual ineffectiveness,” for which the Strickland test was established. Id. 
¶34       The Strickland test requires a showing that (1) the defense lawyer’s performance was deficient—meaning “counsel’s representation fell below an objective standard of reasonableness,” id. at 687–88—and that (2) the deficient performance prejudiced the defendant—meaning there is “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different,” where a reasonable probability is one “sufficient to undermine confidence in the outcome,” id. at 694. It is the defendant’s burden to prove both Strickland prongs. See Davis v. People, 871 P.2d 769, 772 (Colo. 1994).
¶35       The Supreme Court modified Strickland’s performance/prejudice test for the guilty-plea context in Hill v. Lockhart, 474 U.S. 52, 58–59 (1985). The Court explained that the performance prong is no different in the plea setting, id., but as for prejudice, “the defendant must show that there is a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial,” id.  at 59. This is an objective inquiry. See Carmichael v. People, 206 P.3d 800, 806–07 (Colo. 2009). In assessing whether a defendant would elect to plead guilty or go to trial, we have considered the comparative sentencing exposure between a proffered plea bargain and conviction after trial. See id. at 807.
¶36       At first glance, Corson’s ineffectiveness claim conforms to Hill’s performance/prejudice model—instead of pleading guilty, he asserts he would have gone to trial but for counsel’s deficient advice to accept the plea bargain. But Corson alleges an unusual performance violation. He does not assert any mistake on plea counsel’s part. Rather, Corson alleges the government’s failure to disclose K.B.’s false-reporting adjudication created the performance violation by interfering with plea counsel’s ability “to make independent decisions about how to conduct the defense,” Strickland, 466 U.S. at 686. When it comes to the second prong, Corson argues that he satisfies the Hill standard—but for the government’s non-disclosure, he would have gone to trial.
¶37       Because Corson’s claim is something of a hybrid of the government-interference and actual-ineffectiveness frameworks, the People ask us to reject it out of hand. All of the government-interference cases discussed in Strickland, the People accurately note, involved defendants who were convicted after a trial. See id. (discussing government-interference cases).Because Corson pled guilty, they argue the government-interference framework cannot apply here to establish a performance violation and that we should assess the validity of Corson’s plea only as a matter of voluntariness.
¶38       But if Corson has failed to make the required prejudice showing, we need not address the performance prong at all. See People v. Garcia, 815 P.2d 937, 941 (Colo. 1991) (“In resolving an ineffective-assistance claim, a court is not required to first determine whether counsel’s performance was constitutionally deficient, for if the defendant fails to make an affirmative demonstration of prejudice, then the court may resolve the claim on that basis alone.” (citing Strickland, 466 U.S. at 697)).
¶39       So, is there a reasonable probability that Corson would have gone to trial if the People had disclosed K.B.’s false-reporting adjudication? Undoubtedly, a trial with that impeachment information would have been more attractive to Corson than a trial without it, but for several reasons the non-disclosure does not undermine our confidence in the outcome here. See Strickland, 466 U.S. at 694 (“A reasonable probability is a probability sufficient to undermine confidence in the outcome.”).
¶40       First, the post-conviction court found that Corson knew about K.B.’s adjudication before he pled guilty. Perhaps recognizing how damaging this finding is, Corson disputes it. He argued below that the post-conviction court’s factual findings were “erroneous in some important particulars, and contrary to the record,” but the court of appeals determined there was record support for finding that Corson personally knew of K.B.’s adjudication, see Corson, ¶ 43. And rightly so. Corson acknowledged having access to K.B.’s Turning Point file which referenced her false-reporting adjudication; and Corson’s former supervisor testified that she discussed K.B.’s adjudication with Corson before he pled guilty. After examining these circumstances, the post-conviction court found Corson incredible. Because its credibility determination has record support, it may not be disturbed on appeal. See People v. Minjarez, 81 P.3d 348, 353 (Colo. 2003) (“[W]e will defer to a trial court’s . . . credibility findings so long as they are supported by competent evidence in the record.”); see also Sanchez-Martinez, 250 P.3d at 1254 (“[A]ssessing the credibility of witnesses is a trial court function.”).
¶41       Second, a reasonable person in Corson’s position would not have suddenly become eager to demand a trial in this case had K.B.’s adjudication been disclosed because the incremental value of this information was slight given the other evidence. Most notably:

· Corson initially denied having any sexual relationship with K.B., but semen matching Corson’s DNA profile was subsequently found on a sweatshirt in K.B.’s possession;
· Corson was already armed with other impeachment evidence against K.B. because she had previously contradicted herself: after telling her Turning Point roommate about the relationship, K.B., when confronted by Turning Point staff, said she had lied and made the whole thing up;
· The contents of Corson’s resignation letter from Turning Point3 and a pretext phone call K.B. placed to Corson at police urging4 are both consistent with the existence of an illegal relationship.
¶42       Third, and perhaps most significantly, the plea agreement provided substantial benefits to Corson. The People promised to dismiss the pattern-of-abuse charge in exchange for Corson’s guilty plea on the first count. They also stipulated to a probationary sentence. Had Corson gone to trial and been convicted of the pattern offense, he faced a mandatory prison sentence with a minimum term of between eight and twenty-four years and a potential maximum term of life. See §§ 16-11-309(1)(c); 16-13-803(5)(a)(V); 16-13-804(1); 18-1-105(1)(a)(V)(A); 18-3-405.3(1), (2)(b), (4), C.R.S. (2001). See generally Chavez v. People, 2015 CO 62, 359 P.3d 1040 (describing per se crime of violence sentencing for sex offenses); Hunsaker v. People, 2015 CO 46, 351 P.3d 388 (same). Corson thus faced a daunting downside risk at trial.
¶43       For all of these reasons, Corson has not shown a reasonable probability that a defendant in his position would have insisted on trial.5 Having reached this conclusion, we turn now to the court of appeals’ determination that Crim. P. 16 required the prosecution to turn over K.B.’s false-reporting adjudication.
B. Juvenile Adjudications and Crim. P. 16
1. Standard of Review
¶44       We review interpretations of the rules of criminal procedure de novo. People v.  Steen, 2014 CO 9, ¶ 9, 318 P.3d 487, 490. “To ascertain the appropriate construction of a rule of criminal procedure, we employ the same interpretive rules applicable to statutory construction.” Kazadi v. People, 2012 CO 73, ¶ 11, 291 P.3d 16, 20.
2. Juvenile Adjudications Are Not “Convictions”
¶45      Crim. P. 16 requires prosecutors to disclose the “prior criminal convictions” of any person the government intends to call as a witness. See Crim. P. 16(I)(a)(1)(V). The court of appeals recognized this provision does not specifically mention juvenile adjudications, but it noted that another part of the rule requires disclosure of any information that “tends to negate the guilt of the accused . . . .” Corson, ¶ 18 (quoting Crim. P. 16(I)(a)(2)). The court of appeals combined these provisions in concluding that juvenile adjudications must be automatically disclosed. See id. at ¶¶ 18–20, 22.
¶46       The People argue this interpretation places a new discovery burden on prosecutors and is contrary to the rule’s text, since juvenile adjudications occur in civil proceedings and therefore cannot fall under the rule’s disclosure provision for criminal convictions. We agree.
¶47       The juvenile justice system is separate from the criminal justice system, see § 19-1-104(1)(a), C.R.S. (2015) (establishing juvenile court jurisdiction over delinquency proceedings), and the Children’s Code defines an “adjudication” differently from a conviction, see § 19-1-103(2), C.R.S. (2015). An adjudication results when a court determines that proof beyond a reasonable doubt establishes that a juvenile has committed “a delinquent act,” not a crime.6 Id. Simply put, a juvenile adjudication is not a criminal conviction. Cf. People v. D’Apice, 735 P.2d 882, 883 (Colo. App. 1986) (holding juvenile adjudication cannot be used to attack witness’s credibility under section 13-90-101, C.R.S. (1986), because it is not “a felony conviction”). Therefore, juvenile adjudications are not subject to automatic disclosure as part of a witness’s criminal history under Crim. P. 16(I)(a)(1)(V).7
III. Conclusion
¶48       We conclude Corson is not entitled to post-conviction relief. He has not demonstrated that he suffered a due process violation because the People were under no constitutional duty to disclose K.B.’s juvenile adjudication for false reporting. Corson’s claim of ineffective assistance of counsel fails because he has not demonstrated prejudice—there is no reasonable probability that he would have chosen to proceed to trial had the false-reporting adjudication been disclosed. Furthermore, we conclude that juvenile adjudications are not part of a witness’s criminal history and are therefore not subject to automatic disclosure under Crim. P. 16(I)(a)(1)(V). Because the court of appeals erred in its interpretation of Crim. P. 16 and in reversing the post-conviction court’s denial of Corson’s claims, we reverse its judgment.
JUSTICE MÁRQUEZ and JUSTICE GABRIEL do not participate.

[1] During the three-year wait between the 2007 hearing and the 2010 order, Corson filed a number of actions to compel a decision. In 2008, he filed an appeal in the court of appeals, but that court dismissed the case for want of an appealable judgment. People v. Corson, No. 08CA622 (Colo. App. May 22, 2008) (unpublished order). Still awaiting a decision in July 2010, Corson filed an original proceeding in this court seeking mandamus relief; we declined to exercise jurisdiction but granted Corson leave to refile if the post-conviction court did not take action within sixty days. In re People v. Corson, No. 10SA241 (Colo. July 23, 2010) (unpublished order). When that deadline came and went, Corson revived his petition, but we again declined to exercise jurisdiction after the post-conviction court entered its order denying Corson relief on December 22, 2010. In re People v. Corson, No. 10SA302 (Colo. Dec. 28, 2010) (unpublished order).
[2] We granted review of the following issues:
Whether the court of appeals erred when it reversed the district court’s order by carving out an exception to the holding in United States v. Ruiz, 536 U.S. 622 (2002), that the Government is not required to disclose material impeachment evidence prior to entering into a plea agreement with a criminal defendant.Whether the court of appeals erred as a matter of law when it interpreted Crim. P. 16 in a novel way to conclude that a juvenile adjudication is part of a witness’s criminal history, thereby broadly expanding the prosecution’s duty to disclose juvenile adjudications. Whether the court of appeals erred as a matter of law when it concluded that Strickland v. Washington, 466 U.S. 668 (1984), applies to a collateral attack on a guilty plea based on evidence discovered after the guilty plea was entered.
[3] Corson’s June 14, 2002, letter denied the allegations in full, but the letter reads in part, “I do acknowledge that perhaps naively and without forethought I conceivably stepped outside the scope of my responsibilities.” Corson also wrote, “I apologize for any lack of judgment on my part and am choosing to execute better judgement by stepping aside so that this matter and all its ramifications real or fancied may fade and be forgotten as time would have it.”
[4] During the pretext call on June 28, 2002, Corson repeatedly expressed reluctance to speak with K.B. over the phone. At one point in the conversation she said, “It just kills me to know that (inaudible) wouldn’t come home with me. And to know that every night for eleven months you went home to her [referring to Corson’s wife] and not me. It just killed me.” Corson replied, “I don’t think there’s a whole lot more I could say over the phone.” When K.B. asked, “Why is it so hard to at least give me a little bit of closure[?]” Corson responded, “I will and I’m offering you that but I, like I said I won’t do it over the phone. The difference now is that things that we did, things that were said, you know things that were between us became not between us and I understand the reasons for that but what’s to stop that from happening in the future[?]” Before hanging up, Corson said “I love you.”
[5] Both sides in this case also draw our attention to Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006), which established that a defendant can show his plea was involuntary under Brady v. United States, 397 U.S. 742 (1970), if he shows (1) “some egregiously impermissible conduct . . . antedated the entry of his plea,” and (2) “the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice.” The Ferrara court made clear that the second prong of this test requires the same analysis as ineffective-assistance claims. See id. at 294 (quoting Hill, 474 U.S. at 59). For the reasons just discussed, Corson has not shown he suffered the requisite prejudice to establish an ineffectiveness claim; therefore, a voluntariness claim under Ferrara would fare no better.
[6] “Adjudication” takes on the same meaning as “conviction” when it is an element of a separate offense or used for a sentence enhancement. See § 19-1-103(2).
[7] Nevertheless, the prosecution must sometimes disclose the juvenile adjudications of its witnesses. Crim. P. 16(I)(a)(2) states, “The prosecuting attorney shall disclose to the defense any material or information within his or her possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor.” In People v. District Court, 790 P.2d 332, 337–38 (Colo. 1990), we construed this provision as including a materiality component. “[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” Id. (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)); see also In re Attorney C, 47 P.3d 1167, 1170–71 (Colo. 2002) (discussing this materiality standard). Because Corson has not demonstrated a reasonable probability that the result of the proceeding would have been different had K.B.’s adjudication been disclosed, Crim. P. 16(I)(a)(2) is of no assistance to him. Beyond Crim. P. 16, the Confrontation Clause requires that defendants have a chance to cross-examine witnesses about pending juvenile proceedings in order to uncover bias, such as the witness’s hope for leniency as consideration for testifying. See U.S. Const. amends. VI, XIV; see also People v. Cevallos-Acosta, 140 P.3d 116, 126–27 (Colo. App. 2005) (citing Davis v. Alaska, 415 U.S. 308 (1974); People v. Bowman, 669 P.2d 1369 (Colo. 1983)). CRE 608(b) also allows a defendant to ask about a witness’s past juvenile adjudications on cross examination if the adjudications serve as specific instances of conduct reflecting on a witness’s veracity. See CRE 608(b).